UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BP AMERICA PRODUCTION | § | |
| COMPANY, *et al.* | § | |
| | § | CIVIL ACTION NO. 09-CV-03360 |
| v. | § | Consolidated With |
| | § | CIVIL ACTION NO. 10-CV-01162 |
| NATIONAL OILWELL VARCO, L.P., | § | |
| *et al.* | § | |

**JOINT DISCOVERY/CASE MANAGEMENT PLAN**
**UNDER RULE 26(F) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

1. **State where and when the conference among the parties required by Rule 26(f) of the Federal Rules of Civil Procedure was held, and identify the counsel who attended for each party, including name, address, bar number, phone and fax numbers and email addresses.**

On August 17, 2010, counsel for the plaintiffs, S. Gene Fendler and Carol Welborn Reisman, conferred with defense counsel, Charles Mouton, Lawrence Kullman, and J.D. Page. Contact information for all attorneys is included below in No. 24. The name, address, bar number, phone and fax numbers for the counsel who attended the conference is as follows:

**Counsel for Plaintiffs:**

S. Gene Fendler – Louisiana State Bar No. 5510
Carol Welborn Reisman – Texas State Bar No. 24052638 and Louisiana State Bar No. 20410
Liskow & Lewis
701 Poydras Street
Suite 5000, One Shell Square
New Orleans, LA 70139
(504) 581-7979 – Phone
(504) 556-4108 – Fax
sgfendler@liskow.com – Email
cwreisman@liskow.com – Email

**Counsel for Defendants:**

J. D. Page – Texas State Bar No. 15406700
3155 Phoenix Tower
3200 Southwest Freeway
Houston, TX  77027
(713) 840-9200 – Phone
(713) 840-9217 – Fax
jdpage@jdpagelaw.com – Email

Lawrence S. Kullman – Louisiana State Bar No. 7884
Lewis, Kullman, Sterbcow and Abramson
Pan American Life Building
Suite 2615
601 Poydras St.
New Orleans, La. 70130
(504) 588-1500 -- Phone
(504) 588-1514 -- Fax
larrykul@lksalaw.com – Email

Charles A. Mouton – Louisiana State Bar No. 17721
Mahtook & Lafleur, L.L.C.
P. O. Box 3089
600 Jefferson St., Suite 1000
Lafayette, LA  70502
(337) 266-2189 – Phone
(337) 266-2303 – Fax
cmouton@mandllaw.com - Email

**2.     List the cases related to this one that are pending in any state or federal court with the case number and court, and state how they are related.**

There are no other pending cases filed in court related to these consolidated cases.

Plaintiffs, BP America Production Company and BP Exploration & Production Inc., have

filed an arbitration with the American Arbitration Association against Seahawk Drilling,

Inc. f/k/a Pride Offshore, Inc.  The claims in the arbitration arise out of the same facts as

are involved in the case at bar.   No scheduling report has been confected in the arbitration.   NOV has requested, but has not been provided, information about this arbitration.   Plaintiffs do not recall being asked by the NOV defendants for information about the arbitration

**3.     Briefly describe what this case is about.**

Plaintiffs, BP America Production Company ("BP America"), BP Exploration & Production Inc. ("BPX&P"), and American Home Assurance Company ("American Home"), brought this suit to recover damages sustained when the drilling rig on the Mad Dog platform located on the Outer Continental Shelf off the coast of Louisiana slid off the platform and into the Gulf of Mexico during the passage of Hurricane Ike.   The plaintiffs allege that the defendants, National Oilwell Varco, L.P., National Oilwell Varco, Inc., National Oilwell Varco Norway, AS, Hydralift Amclyde, Inc., and Hydralift, Inc. (collectively referred to as "the NOV defendants") breached a warranty owed to the plaintiffs and/or were grossly at fault based upon their involvement in the design, manufacture, installation, maintenance, repair, modification, and/or training concerning the use of brake clamps used to secure the drilling rig on the platform.

NOV denies any wrongdoing or liability and contends that, under the operative contract between BP America and Pride Offshore, Inc., NOV is entitled to full indemnity, insurance, and defense from plaintiffs for any liability and expenses arising from the claims plaintiffs assert in this action.   Plaintiffs do not believe that indemnity, insurance, or a defense is owed to the NOV defendants.

**4.      Specify the allegation of federal jurisdiction.**

Federal subject matter jurisdiction exists pursuant to the Outer Continental Shelf

Lands Act (the "OCSLA"), 43 U.S.C. § 1331.

**5.      Name the parties who disagree with the plaintiff's jurisdictional allegations and state their reasons.**

No parties disagree.

**6.      List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.**

None yet known pending discovery.

**7.      List anticipated interventions.**

No interventions are anticipated.

**8.      Describe class-action issues.**

There are no class-action issues.

**9.      State whether each party represents that it has made the initial disclosures required by Rule 26(a).  If not, describe the arrangements that have been made to complete the disclosures.**

Some initial disclosures have been exchanged, but the parties disagree as to

whether the disclosures made to date are sufficient.

The NOV defendants do not believe that plaintiffs have satisfied Fed. R. Civ. P.

26(a)(1)(A)(iii)'s requirement for the production of documents relating to the

computation of damages, "including materials bearing on the nature and extent of the

injuries suffered."   The plaintiffs have provided a one page document they contend

summarizes some, but not all, of their damages.  Plaintiffs have offered to supplement

their initial disclosures on or before October 31, 2010.  NOV believes that the plaintiffs

should be compelled to produce all available damages information as required by Fed. R. Civ. P. 26(a)(1)(A)(iii) without any further delay.

The NOV defendants also do not believe that plaintiffs have satisfied their burden under Fed. R. Civ. P. 26(a)(1)(A)(i) because they have not disclosed needed contact information for witnesses.   As an example, BP has listed Ed Norwood, John Guide, and Patrick O'Connor as "Contractor" at the plaintiffs' business address on 200 Westlake Park Blvd.  This suggests that they are independent contractors who office at BP, but Plaintiffs list their telephone numbers as "unknown."  The NOV defendants note that while Plaintiffs have indicated they intend to depose Messrs. Zheng, Smith, Duffy, Lansky, Metcalf, Calfato, Kline, STD, Pittman, A. Coleman, Hawk, S. Coleman, Jagneaux, Allen, Bonafey, Keenan, Niccolini, Otto, and Pickles, Plaintiffs have not provided information for these witnesses in their initial disclosures to allow NOV to locate or identify them.  NOV requests that the Court require plaintiffs to disclose immediately at least the contact information for the witnesses required by Rule 26(a)(1)(A)(i).

Plaintiffs state that the foregoing individuals are, on information and believe, all Pride employees and plaintiffs do not have contact information at this time.  Moreover, many of these witnesses were identified by the NOV defendants in their initial disclosures and the plaintiffs do not have their contact information.

Plaintiffs believe that the NOV defendants misread Rule 26(a)(1)(A). Plaintiffs contend that Rule 26 does not require that initial disclosures state whether an individual is a former or current employee, and that they have fully complied with the Rule.

Plaintiffs supplemented their initial disclosures on March 10, 2010. Plaintiffs contend that they did not hear anything further about their witness disclosures being inadequate until August 22, 2010.

**10.    Describe the proposed agreed discovery plan, including:**

**a.    responses to all the matters raised in Rule 26(f), including any agreements (and disputes) concerning electronic discovery;**

NOV believes the case should be effectively resolved at the summary judgment stage. NOV intends to file a summary judgment with respect to its contractual right to indemnity from BP within three business days of the initial scheduling conference. If the Court's ruling on the indemnity issues does not result in resolution of the case, NOV anticipates that substantial further discovery will be necessary. NOV anticipates sending an initial set of interrogatories, requests for production, requests for admission, and a request for inspection to the plaintiffs within three business days of the initial scheduling conference, and notices of corporate representative depositions directed to various non-parties. Before the plaintiffs filed the case at bar, the plaintiffs asked NOV for extensive documents, and NOV provided the plaintiffs all of the documents they requested. NOV should now be entitled to receive paper discovery from the plaintiffs, the plaintiffs' witnesses who investigated the matter, Pride, and other non-parties before it should be compelled to provide depositions to the plaintiffs.

Plaintiffs believe this is a factually intensive case that will require the taking of numerous factual and expert depositions.  Plaintiffs assert that the NOV defendants wish to initially curtail discovery and ask the Court through motion practice to resolve the contractual disputes between the parties concerning the right to indemnity and insurance, but Plaintiffs believe the contractual issues the NOV defendants will raise through motions for summary judgment involve mixed questions of fact and law which cannot be decided by summary judgment.

Plaintiffs are not certain as to what the NOV defendants are referring to when they state that the plaintiffs asked for "extensive documents" and that they provided the plaintiffs with all of the documents they asked.  Prior to filing the lawsuit, documents were exchanged informally by the parties to assist BP America in its investigation into the incident.  BP America in turn provided a copy of its root cause investigative report and underlying documents.  Neither party has propounded written discovery to the other and both parties should be entitled to do so and to propound subpoenas to third-parties.

**b.      when and to whom the plaintiff anticipates it may send interrogatories;**

Plaintiffs anticipate sending a preliminary round of interrogatories, requests for admissions, and requests for production of documents to each of the NOV defendants within fifteen (15) days of the initial scheduling conference.  As explained above, prior to filing the lawsuit, documents were exchanged informally by the parties to assist BP in its investigation into the incident.  BP in turn provided a copy of its root cause investigative report and underlying documents.  Neither party has propounded written discovery to the

other and both parties should be entitled to do so and to propound subpoenas to third parties.

### c.    when and to whom the defendant anticipates it may send interrogatories;

NOV anticipates sending an initial set of interrogatories, requests for production, requests for admission, and a request for inspection to the plaintiffs within three business days of the initial scheduling conference, and notices of corporate representative depositions directed to various non-parties.  Before the plaintiffs filed the case at bar, the plaintiffs asked NOV for extensive documents and other information, and NOV cooperated and provided the plaintiffs all of the documents and other information requested they requested.  In fairness, NOV should now be entitled to receive paper discovery from the plaintiffs before it should be compelled to be provide depositions to the plaintiffs.

### d.    of whom and by when the plaintiff anticipates taking oral depositions;

Plaintiffs believe this is a factually intensive case which will require the taking of numerous factual and expert depositions.

Plaintiffs anticipate taking the Rule 30(b)(6) corporate deposition of each of the defendants as well as the Rule 30(b)(6) corporate deposition of Pride Offshore, Pride International, Inc. ("Pride International"), and Petroleum Supply Company.

Plaintiffs anticipate taking the depositions of all or some of the following identified employees or former employees of the various NOV defendants as well as any employees or former employees whose identities may subsequently be discovered:

**Halvard Aas** (current employee in Norway who was the project manager and approved the manufacturing record book, user manual, calculations for parking brake, and technical description for parking clamp); **Frode Jenson** (current employee in Norway who performed calculations used in the design of the brakes); **Keith Jones** (current consultant in Leeds, U.K. who has been identified by the NOV defendants as having been involved in the design of the parking brakes); **Eddie Preston** (former NOV consultant in West Yorkshire, U.K. who created the technical specification for the brakes); **Arild Abelsenes** (current employee in Norway identified by the NOV defendants as having been involved in the design of hydraulic equipment involved with the parking brakes); **Oddbjorn Bjornaraa** (current employee in Norway identified by the NOV defendants as having been involved in purchasing for the parking brakes); **George E. Viki** (current employee in Norway who drafted the user manual for the brakes and has been identified as being involved in the sale, design or related issues regarding the parking brakes); **Kirsti Krauss** (current employee in Norway who was involved with the design calculations for the brakes); **Odd Einar Eiksa** (current employee in Norway who was the project engineer who checked the user manual and the subsequently issued 11/8/07 description of parking brake calculation and was present during the factory testing); **Glenn Thore Saebo** (former employee in Norway who has been identified by the NOV defendants as having been involved in the design, sale or related issues of the parking brake); an individual with the initials **MOG** (prepared the 11/8/07 Description of parking brake calculation); **Greg Norwood** (former sales representative in Houston who has been identified by the NOV defendants as having been involved in the sale of the parking brakes and who

prepared the loads for design); **Tom Yost** (current employee in Houston who has been identified by the NOV defendants as having been involved in the sale of the parking brakes and who was sent the skidding/clamping loads for the gripper design as well as the clamping design by Pride on March 31, 2003); **John Koos** (former employee in Houston who has been identified by the NOV defendants as possibly having some involvement in the sale of the parking brakes); **Harvord Neilson** (current employee in Norway identified by the NOV defendants as having been involved in the sale or related issues regarding the parking brake); **Svein Stubstad** (current employee in Houston who was involved in the design, sale or related issues of the parking brake); **Rolf Gullaksen** (former Vice President of Hydralift, Inc. who is listed on the Petroleum Supply Company purchase orders for the jacking units and brakes); **Roger Kjaniksen** (former employee who was involved with the installation, commissioning or service issues with the parking brake); **Richard Hallman** (worked with Kjaniksen on brakes during commissioning); **Kelly Grossie** (former employee in Scott, LA who has been identified by the NOV defendants as having been involved in installing, commissioning, and/or servicing the brakes); **Joseph Guidry** (former employee in New Iberia, LA who has been identified by the NOV defendants as having been involved in installing, commissioning, and/or servicing the brakes); **Joseph Minix** (former employee involved with installation, commissioning or service issues who assisted Pride in upgrading the brakes in 2006); **Joey Begnaud** (current employee in Houston who has been identified by the NOV defendants as having been involved with installation, commissioning or service issues involving the parking brake); **Larry Melancon** (current employee in New Iberia, LA who has been identified

by the NOV defendants as having been involved with installation, commissioning or service issues); **Shawn Firenza** (current employee in Houston who was involved in BP's post-incident investigation); **Sean Murphy** (current employee in Houston who has been identified by the NOV defendants as the account manager for Pride who attended meeting with BP after Ike); **Michelle Pena** (current employee who has been identified by the NOV defendants as being a former Pride employee involved in purchasing at Pride).

Plaintiffs anticipate taking all or some of the depositions of the following current or former Pride personnel as well as any employees or former employees whose identities may subsequently be discovered:   **Peter or Phillip Zhang** (calculated maximum hurricane loads that were provided to Hydralift on 3/31/03); **Trevor Smith (**Pride Project Technical Lead Engineer who issued original Technical Specification Rig, Parking Brake Clamps & BOP Skidding Equipment); **Michael Duffy** (led construction of Mad Dog and Holstein rigs and approved Technical Specification Rig, Parking Brake Clamps & BOP Skidding Equipment);   **Yuri Lansky (**Project Technical Lead Engineer who reissued the Technical Specification Rig, Parking Brake Clamps & BOP Skidding Equipment and approved of Hydralift's calculations of maximum load for the brake clamps); **Craig Metcalf (**identified by the NOV defendants as the Pride Project Procurement Manager); **Jean Marie Calfato or Cacafato (**Pride International employee who was present during and approved of Factory Acceptance Testing of the brakes); **Dan Kline** (Mad Dog Operations Manager who was also involved during the construction phase); an individual with the **initials STD** (approved of maintenance procedures for the skidding system); **Autrey Boudreaux** (Mad Dog Toolpusher); **Kevin Higginbotham** (Mad Dog Rig

Superintendent); **Grady Pittman** (Mad Dog Toolpusher who completed Hurricane Ike Guidelines for Tie Downs Checklist);  **Robert Ward** (Pride Rig Superintendent); **Harold Calais** (Preventative Maintenance Manager); **Steve Coleman** (Preventative Maintenance Coordinator); **E. Hawk** (maintenance worker who reported that new bushing upgrade was added to all brakes 6/30/06 to 7/8/06); **Adrian Coleman** (maintenance worker who performed weekly lube on 8/8/08 to 8/16/08 and who performed maintenance aspects of Hurricane Ike Final Check Sheet); **B. Jagneaux** (maintenance worker who installed rebuilt brake on SW corner on 4/29/05); **James W. Allen** (Pride President who signed contracts with BP); **Ed Norwood** (worked for Pride as Commissioning Manager and later worked as operational consultant to BP); **Michelle Bonafey** (identified by NOV defendants as being involved in providing information regarding the design of the DES); **Ray Kennan** (identified by NOV defendants as being involved with maintenance); **Vincent Nicolini** (identified by NOV defendants as being involved with maintenance); **Bill Otto** (identified by NOV defendants as being the planning manager); **John Pickles** (identified by NOV defendants as being the QA/QC manager); **Greg Sonnier** (identified by NOV defendants as the Mad Dog OIM).

Finally, plaintiffs plan to take the depositions of any designated defense experts.

The NOV defendants do not stipulate to and, in some cases contest, the descriptions of persons and their purported involvement in this matter contained in Plaintiffs' answer to this inquiry.

**e.    of whom and by when the defendant anticipates taking oral depositions;**

NOV anticipates it will take oral depositions of the plaintiffs current and former employees, Pride, Stress Engineering and the companies and individuals identified or relied upon in the Stress and BP reports, Plaintiffs' vendors and subcontractors pertinent to the design, operation and maintenance of the Mad Dog spar (including Pride), and Plaintiffs' experts.  NOV does not yet have information from the plaintiff, Pride or others as to the identity and contact information of the witnesses it anticipates it may want to depose, or of the true roles or significance of those witnesses.  Based on the information now known to NOV, NOV anticipates it will take the depositions of at least those witnesses who have been disclosed by the plaintiffs and those disclosed on NOV's initial disclosures, and in BP's witness interview notes, including Messrs. Zack Smith, John Sistrunk, Robert Ward, Grady Pittman, Autrey Boudreaux, Perry Hill, Tom Von Aschwege, Matt Daniels, Ed Bracken, Rick Macon, Kevin Higginbotham, Mark Diehl, Mark Dischinger, Dan Kline, Ed Norwood, John Guide, Bruce Luberski, Gavin Kidd, Jeff Hohle, Pat O'Connor, Thomas Duhon, Doug Schonacher, and Jonathan Gulick.

**f.    (i)    the date experts for plaintiff (or party with the burden of proof of an issue) will be designated and their reports provided to opposing party;**

Plaintiffs contend that in accordance with Rule 26(a)(2) of the Federal Rules of Civil Procedure, expert designations and report disclosures be made by all parties on October 31, 2011 and that, in accordance with Rule 26(a)(2) where expert testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by

another party" the designation and report disclosures should be made within 30 days after the other party's disclosure (*i.e.*, on or before November 30, 2011).  Plaintiffs maintain the defendants' proposal that they be provided four (4) months to provide their expert reports after receiving the reports of Plaintiffs' experts is in direct contradiction to Rule 26(a)(2), which contemplates a simultaneous exchange of reports with a thirty (30) day delay for matters that contradict or rebut original reports.

Plaintiffs propose that expert designations and report disclosures be made by all parties on October 31, 2011 and that where expert testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by another party" the designation and report disclosures should be made within 30 days after the other party's disclosure (*i.e.*, on or before November 30, 2011).

> **(ii)    the date experts for defendant will be designated and their reports provided to opposing party;**

The NOV defendants propose that Plaintiffs designate experts and expert reports by September 30, 2011, and Defendants designate experts and expert reports by January 31, 2012.

> **g.    list of expert depositions the plaintiff (or party with the burden of proof on an issue) anticipates taking and their anticipated completion date (*see* Rule 26(a)(2)(B) (expert report)); and**

Plaintiffs are presently unaware of the identities of defense experts; however, plaintiffs anticipate taking depositions of all defense experts after factual discovery has been completed, expert designations have been made, and expert reports have been exchanged.

        **h.**      **list of expert depositions the defendant (or opposing party) anticipates taking and their anticipated completion date (*see* Rule 26(a)(2)(B) (expert report));**

NOV anticipates taking the depositions of Plaintiffs' experts, Stress Engineering and any other liability or damages experts. NOV anticipates taking at least two rounds of paper discovery and factual depositions before those expert depositions. In light of the scope and anticipated amount of discovery, NOV anticipates completing Plaintiffs' experts' depositions by December 31, 2011.

**11.**    **If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.**

The parties disagree as to how discovery should proceed. Plaintiffs request that discovery proceed on all issues in the case because, as explained above, most of the contractual issues involved disputed factual issues. The NOV defendants request that depositions, if any, proceed first on the indemnity, defense, and insurance summary judgment issues and then on the underlying claim after the Court has ruled on the parties' contractual indemnity rights and obligations.

As described above, Plaintiffs request that expert reports be exchanged simultaneously by both sides and that depositions of experts be taken after all expert reports have been exchanged. The NOV defendants request that Plaintiffs designate their experts and produce their expert reports and make their experts available for deposition before defendants produce their expert reports.

**12.**    **Specify the discovery beyond initial disclosures that has been undertaken to date.**

None.

**13.     State the date the planned discovery can reasonably be completed.**

Friday, March 30, 2012.

**14.     Describe the possibilities for a prompt settlement or resolution of the case that were discussed in the Rule 26(f) meeting.**

Plaintiffs would be agreeable to mediation of the case.   NOV believes that determination of the parties' contractual indemnity rights and obligations could result in prompt resolution of the case.

**15.     Describe what each party has done or agreed to do to bring about a prompt resolution of this dispute.**

The NOV defendants have made an offer of judgment in keeping with their understanding of the operative contracts.

**16.     From the attorneys' discussion with their client(s), state the alternative dispute resolution techniques that are reasonably suitable.**

Both Plaintiffs and NOV are amenable to alternative resolution techniques such as mediation.

**17.     Magistrate judges may now hear jury and non-jury trials.   Indicate the parties' joint position on a trial before a magistrate judge.**

There is no joint position on this issue.

**18.     State whether a jury demand has been made and if it was made on time.**

Yes.  All parties have made a jury demand.

**19.     Specify the number of hours it will take to try this case (including jury selection, presentation of evidence, counsel's opening statements and argument, and charging the jury).**

Plaintiffs estimate that trial will take four weeks (roughly 140 hours).   NOV estimates that trial will take two to three months.

-16-

**20.    List pending motions that could be ruled on at the initial pretrial conference.**

NOV believes the motion to dismiss filed by Hydralift, AS can be ruled on. Plaintiffs filed an opposition to the motion to dismiss in one of the consolidated matters before the court and plans to file an opposition in the other matter shortly.   Plaintiffs believe it is premature at this point to dismiss Hydralift, AS.

**21.    List other pending motions.**

The only pending motion is the Motion to Dismiss filed by Hydralift, AS.

**22.    Indicate other matters peculiar to this case, including but not limited to traditional and electronic discovery issues, that deserve the special attention of the court at the conference.**

NOV believes that an inspection of the Mad Dog Spar and the brakes presently located on the Spar is essential to the preparation of their defense.  Time is of the essence because BP has just disclosed it intends to remove the remaining portion of the DES (drilling equipment structure), the skid beams and the remaining parking brakes from the Spar in November, 2010.  Whether BP's planned procedure for the disassembly and possible storage of the DES and brakes will result in the destruction of critical evidence has not yet been disclosed by BP.

Under the circumstances, NOV proposes the following:

1.    That an inspection of the remaining DES assembly and parking brakes take place on the Spar before BP initiates disassembly for the purpose of photographing, inspecting, and measuring the remaining DES components; and for the sampling of lubricants from the remaining brakes, and hydraulic fluid from the HPU.

-17-

2. That the remaining parking brakes be removed intact from the DES and stored in a facility in the Houston area.  Plaintiffs are agreeable to removing the remaining brakes and storing them in Shriever, Louisiana.

3. That NOV have the right, on reasonable notice, to further test, disassemble and inspect one or more of these remaining brakes as is necessary and reasonable for the preparation of their defense.

**23. Certify that all parties have filed Disclosure of Interested Persons as directed in the Order for Conference and Disclosure of Interested Persons, listing the date of filing for original and any amendments.**

Disclosure of Interested Persons was timely filed by Plaintiffs and NOV.

**24. List the names, bar numbers, addresses, email addresses, and telephone numbers of all counsel.**

**Counsel for Plaintiffs:**

S. Gene Fendler – Louisiana State Bar No. 5510
David W. Leefe – Louisiana State Bar No. 1479
Carol Welborn Reisman – Texas State Bar No. 24052638 and Louisiana State Bar No. 20410
Devin Reid – Louisiana State Bar No. 32645
Liskow & Lewis
701 Poydras Street
Suite 5000, One Shell Square
New Orleans, LA  70139
(504) 581-7979 – Phone
(504) 556-4108 – Fax
sgfendler@liskow.com – Email
dwleefe@liskow.com – Email
cwreisman@liskow.com – Email
dlreid@liskow.com - Email

Robert Hayden Burns – Texas State Bar No. 03456000
Liskow & Lewis
First City Tower
1001 Fannin, Suite 1800
Houston, TX  77002
(713) 651-2900 – Phone
(713) 651-2908 – Fax
rhburns@liskow.com – Email

**Counsel for Defendants:**

J. D. Page – Texas State Bar No. 15406700
3155 Phoenix Tower
3200 Southwest Freeway
Houston, TX  77027
(713) 840-9200 – Phone
(713) 840-9217 – Fax
jdpage@jdpagelaw.com – Email

Melissa M. Davis – Texas State Bar No. 24045756
Ware, Jackson, Lee & Chambers, L.L.P.
2929 Allen Parkway, 42nd Floor
Houston, TX  77019-7101
(713) 659-6400 – Phone
(713) 659-6262 – Fax
melissadavis@warejackson.com – Email

Charles A. Mouton – Louisiana State Bar No. 17721
Mahtook & Lafleur, L.L.C.
P. O. Box 3089
600 Jefferson St., Suite 1000
Lafayette, LA  70502
(337) 266-2189 – Phone
(337) 266-2303 – Fax
cmouton@mandllaw.com - Email

Lawrence S. Kullman – Louisiana State Bar No. 7884
Lewis, Kullman, Sterbcow and Abramson
Pan American Life Building
Suite 2615
601 Poydras St.
New Orleans, La. 70130

larrykul@lksalaw.com
504-588-1500


/s/ Carol Welborn Reisman                    August 24, 2010
Counsel for Plaintiffs                              Date


/s/ Melissa M. Davis                            August 24, 2010
Counsel for Defendants                          Date