# APPENDIX
# OF
# AUTHORITIES

Westlaw.

Slip Copy, 2010 WL 1849278 (C.A.5 (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2010 WL 1849278 (C.A.5 (Tex.)))**

**H**Only the Westlaw citation is currently available.This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007.  See also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4. (Find CTA5 Rule 28 and Find CTA5 Rule 47)

United States Court of Appeals,
Fifth Circuit.
Carlos Aviles ARMENTA, Plaintiff-Appellant,
v.
John PRYOR, Correctional Officer, et al., Defendants-Appellees.
**No. 09-40298**
**Summary Calendar.**

May 10, 2010.

**Background:** Prison inmate brought civil rights action against guard and other defendants for allegedly retaliating against him based on his prior grievances. The United States District Court for the Eastern District of Texas, David Folsom, J., granted defendants motion for summary judgment, 2009 WL 331876, after denying inmate's request for leave to amend his complaint and to conduct additional discovery, and inmate appealed.

**Holding:** The Court of Appeals held that inmate who was the subject of prison disciplinary proceedings months after the filing of his grievances, when guard who was not shown to have any knowledge of these grievances and had no prior interaction with inmate allegedly discovered a weapon in his cell, failed to satisfy burden of producing any evidence from which court could infer either a retaliatory animus for these disciplinary proceedings or requisite causation.

Affirmed.

West Headnotes

**[1] Civil Rights 78 ☞1420**

**78** Civil Rights
  **78III** Federal Remedies in General
    **78k1416** Weight and Sufficiency of Evidence
      **78k1420** k. Criminal law enforcement; prisons. Most Cited Cases
Inmate who was the subject of prison disciplinary proceedings months after the filing of his grievances, when guard who was not shown to have any knowledge of these grievances and had no prior interaction with inmate allegedly discovered a weapon in his cell, failed to satisfy burden of producing any evidence from which court could infer either a retaliatory animus for these disciplinary proceedings or requisite causation, i.e., that disciplinary proceedings would not have occurred but for his protected conduct in filing grievances, and could not prevail on § 1983 retaliation claim. 42 U.S.C.A. § 1983.

**[2] Federal Civil Procedure 170A ☞392**

**170A** Federal Civil Procedure
  **170AII** Parties
    **170AII(J)** Defects, Objections and Amendments
      **170Ak392** k. Amendments. Most Cited Cases

**Federal Civil Procedure 170A ☞851**

**170A** Federal Civil Procedure
  **170AVII** Pleadings and Motions
    **170AVII(E)** Amendments
      **170Ak851** k. Form and sufficiency of amendment. Most Cited Cases
District court did not abuse its discretion in denying a state inmate leave to amend his civil rights complaint in order to add additional defendants and a new due process claim two years after original complaint was filed, where due process claim necessarily called into doubt his guilt for possession of weapon in cell and would have been futile under existing precedent, and where inmate offered no justification for his delay in naming additional defendants. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

**[3] Federal Civil Procedure 170A ☞2553**

Slip Copy, 2010 WL 1849278 (C.A.5 (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2010 WL 1849278 (C.A.5 (Tex.)))

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)3 Proceedings
                170Ak2547 Hearing and Determination
                    170Ak2553 k. Time for consideration
of motion. Most Cited Cases
District court did not abuse its discretion in refusing to
allow additional discovery in § 1983 retaliation action
brought by state prisoner prior to ruling on parties'
crossmotions for summary judgment, where district
court granted inmate an extension of time to file his
motion for summary judgment so that he could con-
duct additional discovery and also granted his motions
to compel discovery in part, and where inmate, despite
attaching nearly 100 pages of documentary evidence,
could not establish issue of material fact as to his
retaliation claim. 42 U.S.C.A. § 1983.
Carlos Aviles Armenta, New Boston, TX, pro se.

Jennifer Jean Wells, Adrienne R. Butcher, Office of
the Attorney General, Austin, TX, for Defen-
dants-Appellees.

Appeal from the United States District Court for the
Eastern District of Texas, USDC No. 5:06-CV-76.

Before JOLLY, WIENER, and ELROD, Circuit
Judges.

PER CURIAM: FN*

*1 Plaintiff-Appellant Carlos Aviles Armenta, an
inmate of the Texas Department of Criminal Justice
proceeding *pro se,* appeals the district court's grant of
summary judgment to Defendant-Appellee John Pryor
FN1 on his 42 U.S.C. § 1983 claim for unlawful retali-
ation. Armenta also appeals several of the district
court's evidentiary decisions and the denial of leave to
amend his complaint. For the following reasons, we
affirm.

## I.

On December 23, 2005, Armenta was participating in
outdoor recreation in an outdoor area of the Telford
Unit Prison. Pryor, a necessities officer, entered Ar-
menta's cell and removed a blanket that had been tied
to a light fixture. Pryor claims that he discovered an

edge weapon in Armenta's cell. Pryor identified Ar-
menta as the sole occupant of the cell and wrote him a
disciplinary case for possession of a weapon. Lieute-
nant Lann, the supervising officer, took the weapon
and approved the disciplinary case. During the dis-
ciplinary hearing, Armenta claimed that the weapon
was not his and had been planted there by Pryor and
Lann in retaliation for prior grievances filed by Ar-
menta. Armenta was found guilty of possession of a
weapon and was punished with 15 days of cell re-
striction, a reduction in line-class status, and loss of
365 days of good time.

On April 7, 2006, Armenta, proceeding *pro se,* filed a
civil rights complaint pursuant to 42 U.S.C. § 1983,
alleging that Pryor, Lann, and "Johnson" conspired to
write him a false disciplinary report in retaliation for
his filing administrative grievances. The district court
originally dismissed the case based on *Heck v.
Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d
383 (1994). This court vacated the judgment, holding
that Armenta's claims of retaliation were not subject to
dismissal under *Heck. Armenta v. Pryor,* 254
Fed.Appx. 376 (5th Cir.2007) (per curiam) (unpub-
lished).

After remand, the district court issued an Order to
Answer. The order indicated that initial disclosures
would be due 30 days after the answer was filed, but
precluded any further discovery without leave of the
court. Pryor answered the complaint and submitted
supplemental disclosures. Armenta filed a notice with
the district court indicating his intent to serve Pryor
with requests for production of documents and inter-
rogatories. Pryor responded, stating that such requests
were not in compliance with the court's initial order
regarding discovery.

On May 16, 2008, Armenta moved to amend his
complaint by adding new defendants and new claims.
The district court denied leave to amend. Armenta also
filed two motions to compel discovery, which the
district court granted in part. Armenta and Pryor filed
motions for summary judgment. The magistrate judge
issued a report and recommendation to grant Pryor's
motion for summary judgment and dismiss the action
with prejudice. The district court adopted the rec-
ommendations and entered final judgment in favor of
all defendants. Armenta timely filed a notice of ap-
peal.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1849278 (C.A.5 (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2010 WL 1849278 (C.A.5 (Tex.)))

## II.

*2 We review a district court's grant of summary judgment under Rule 56 *de novo,* applying the same legal standards as the district court. *Berquist v. Wash. Mut. Bank,* 500 F.3d 344, 348 (5th Cir.2007). "In deciding a motion for summary judgment, the court must determine whether the submissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted).

We review a district court's denial of leave to amend a complaint under an abuse of discretion standard. *Ackerson v. Bean Dredging LLC,* 589 F.3d 196, 208 (5th Cir.2009). The Federal Rules of Civil Procedure provide that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, leave to amend "is by no means automatic." *Ashe v. Corley,* 992 F.2d 540, 542 (5th Cir.1993) (internal quotation marks and citation omitted). "[A] district court may refuse leave to amend a complaint if the complaint as amended would be subject to dismissal." *Ackerson,* 589 F.3d at 208.

We review a district court's discovery and evidentiary rulings under a deferential abuse of discretion standard. *Gomez v. St. Jude Medical Daig Div. Inc.,* 442 F.3d 919, 927 (5th Cir.2006).

To establish a claim for retaliation, Armenta must show that (1) he invoked a specific constitutional right; (2) the defendants intended to retaliate against him for the exercise of that right; (3) there was a retaliatory adverse action; and (4) the action would not have occurred but for the retaliatory motive. *See Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir.1997) (citation omitted). Mere conclusory allegations of retaliation will not suffice; Armenta must produce direct evidence of retaliation or a chronology of events from which retaliation may plausibly be inferred. *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir.1995). We have cautioned district courts to "carefully scrutinize" claims of retaliation in order "[t]o assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them...." *Id.* While the existence of a "legitimate prison disciplinary report" is not an "absolute bar to a retaliation claim" it is certainly "probative and potent summary-judgment evidence." *Id.*

[1] Armenta argues on appeal that he provided sufficient summary-judgment evidence of retaliation because (1) no weapon was produced at the disciplinary hearing; (2) the defendants made contradictory statements regarding the size of the weapon; (3) no pictures of the weapon were produced; and (4) a short time elapsed between the filing of his grievances and his prior lawsuit [FN2] and the discipline action. Armenta has failed, however, to provide any competent summary-judgment evidence of intent or causation. As the district court noted, most of Armenta's grievances were filed months before the alleged retaliatory act and he provides no evidence that any of the Defendants were named in, or had any knowledge of, his prior grievances or his lawsuit. Pryor testified that he had no knowledge of any of Armenta's complaints and had no interactions with him prior to the day he discovered the weapon in his cell. Armenta presented no evidence to the contrary. The alleged inconsistencies in the testimony regarding the size of the weapon likewise do not support an inference of retaliatory intent.[FN3] Furthermore, Armenta received a legitimate disciplinary conviction for possession of a weapon. He presented no competent summary-judgment evidence that he would not have been punished but for the retaliatory motive. Armenta has utterly failed to establish a chronology of events from which retaliation may plausibly be inferred. *Woods,* 60 F.3d at 1166.[FN4]

*3 [2] Armenta asserts that the district court abused its discretion by denying him leave to amend his complaint. Armenta sought to add Warden Rupert, Captain Roseberry, Grievance Investigator Wilson and Counsel Substitute Johnson. Armenta also sought to add a due-process claim and a claim for conspiracy to his complaint. The district court denied leave to amend, finding that Armenta offered no justification for the delay in naming the additional defendants and offered no facts to support his claims.

The district court did not abuse its discretion. Armenta's proposed amendment would have been futile as to his claims against Johnson. As the district court noted, under our precedent, counsel substitutes act on behalf of the inmate, not the state, in a disciplinary hearing and are therefore not amenable to suit under § 1983. *Banuelos v. McFarland,* 41 F.3d 232, 234 (5th Cir.1995) (per curiam). Furthermore, Armenta sought to add a due process claim regarding his prison hearing, which would have been barred by *Edwards v.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1849278 (C.A.5 (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2010 WL 1849278 (C.A.5 (Tex.)))**

*Balisok,* as it necessarily calls his guilt for possession of a weapon into question. *See* 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). Finally, Armenta provides no explanation as to why he failed to amend his complaint to add the additional defendants until two years after the filing of his lawsuit. Under these circumstances, the denial of leave to amend was within the sound discretion of the district court.

[3] Armenta also argues that the district court erred by denying his motion for a continuance, motion in limine, motion for sanctions, and motions to compel discovery. To prevail, Armenta must demonstrate that the denial of additional discovery prejudiced his case. *United States v. Garrett,* 571 F.2d 1323, 1326 (5th Cir.1978) ("[E]rrors made with regard to the allowance of discovery do not require reversal unless they result in substantial prejudice to a party's case.") As an initial matter, we note that the district court granted Armenta an extension of time to file his motion for summary judgment so that he could conduct additional discovery. The district court also granted his motions to compel discovery in part. Armenta attached nearly 100 pages of documentary evidence to his motion for summary judgment, but could not establish an issue of material fact as to his retaliation claim. The district court did not abuse its discretion by refusing to allow additional discovery in this case.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.

FN* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

FN1. Although Pryor is the only defendant to have appeared in this case, the district court dismissed the case as to all Defendants, holding that the parties who had not joined in the successful motion for summary judgment were nevertheless entitled to benefit from it. *See Lewis v. Lynn,* 236 F.3d 766, 768 (5th Cir.2001) ("[W]here a defending party establishes that plaintiff has no cause of action ... this defense generally inures also to the benefit of a defaulting defendant." (internal quotation marks and citation omitted)).

FN2. In that case, as here, Armenta argued that he was retaliated against for filing grievances. We affirmed the grant of summary judgment in that case, holding that Armenta had "not shown that his filing of complaints or grievances motivated any retaliation nor has he shown a chronology of events from which retaliation could be inferred." *Armenta v. Rupert,* 255 Fed.Appx. 32, 33 (5th Cir.2007) (per curiam) (unpublished).

FN3. During the disciplinary hearing, Pryor and Lann described the weapon as consisting of a four-to-five inch blade with a paper handle. In an inter-office communication, Lann described the weapon as being six inches long. This testimony is not necessarily inconsistent, as the latter description could be the total length of the weapon.

FN4. Because we hold that Armenta failed to put forth any competent summary-judgment evidence that could lead to an inference of retaliation, we need not address the district court's alternative grounds for granting summary judgment to the defendants.

C.A.5 (Tex.),2010.
Armenta v. Pryor
Slip Copy, 2010 WL 1849278 (C.A.5 (Tex.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2010 WL 1463466 (S.D.Tex.)
**(Cite as: 2010 WL 1463466 (S.D.Tex.))**

HOnly the Westlaw citation is currently available.

United States District Court,
S.D. Texas,
Houston Division.
John D. CLAYTON, Plaintiff,
v.
CONOCOPHILLIPS COMPANY, et al., Defendants.
**Civil Action No. H-08-3447.**

April 12, 2010.

Joseph Y. Ahmad, Ahmad Zavitsanos et al, Houston, TX, for Plaintiff.

Shana Johnson Clark, Carolanda Bremond, Edward B. Adams, Jr., Fulbright & Jaworski LLP, Laura Gibson, Ogden Gibson et al, Houston, TX, for Defendants.

### *MEMORANDUM AND ORDER*

NANCY F. ATLAS, District Judge.

**\*1** This case is before the Court on Plaintiff John D. Clayton's Motion for Leave to File Third Amended Complaint ("Motion to Amend") [Doc. # 56]. Defendants ConocoPhillips Company ("ConocoPhillips") and James McMorran filed a Response [Doc. # 59], Plaintiff filed a Reply [Doc. # 61], and Defendants filed a Sur-Reply [Doc. # 62]. Having reviewed the full record and applied governing legal authorities, the Court concludes that Plaintiff has not shown good cause as required by Rule 16 of the Federal Rules of Civil Procedure. Consequently, the Motion to Amend is denied.

### I. *BACKGROUND*

Plaintiff filed his Original Petition in state court on October 2, 2008. Plaintiff alleged that, at the time of the merger of Burlington Resources, Inc. ("Burlington") and ConocoPhillips, he was employed by Burlington as the Director of Worldwide Acquisitions and Divestitures. Plaintiff alleged that the Burlington Resources, Inc. Employee Change in Control Severance Plan (the "Plan") provided for employees to receive severance pay if they were terminated for "Good Reason" within two years of the merger. ConocoPhillips asked Plaintiff to remain employed with the company after the merger.

By letter dated March 14, 2006 ("Offer Letter"), ConocoPhillips formally offered Plaintiff a post-merger position with the company and outlined Plaintiff's new salary, position, and terms of employment. In exchange for the offer of employment, ConocoPhillips asked Plaintiff to sign a waiver which provided in part that he would "continue to be entitled to all other rights relating to benefits for which [he was] eligible or may become eligible in the future due to ... any subsequent event or condition which may constitute 'Good Reason' as that term is defined in" the Plan. *See* Original Petition, Att. to Doc. # 1, ¶ 16. Plaintiff accepted the offer and signed the waiver.

Plaintiff alleged in the Original Petition that his job responsibilities and position at ConocoPhillips were substantially reduced and "turned out to be different from and inferior to the position described in the Offer Letter." *See id.,* ¶ 19. Plaintiff asserted a breach of contract claim against ConocoPhillips, claiming that ConocoPhillips "failed and knowingly refused to honor its contractual obligations to Clayton under the Offer Letter." *Id.,* ¶ 25.

ConocoPhillips removed the case to federal court, arguing that the breach of contract claim was preempted by the Employee Retirement Income Security Act ("ERISA"). Plaintiff filed a Motion to Remand [Doc. # 8], which was denied by the Honorable Sim Lake in a Memorandum Opinion and Order [Doc. # 16] entered March 23, 2009. Judge Lake concluded that the breach of contract claim was completely preempted by ERISA. *See* Memorandum Opinion and Order, p. 15.

On June 5, 2009, Plaintiff filed his First Amended Complaint [Doc. # 20], in which he asserted basically the same factual allegations, included the breach of contract claim regarding the Offer Letter that Judge Lake held was completely preempted by ERISA, asserted a breach of contract claim for an alleged breach of the Plan, and added an ERISA claim for benefits under the Plan.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1463466 (S.D.Tex.)
**(Cite as: 2010 WL 1463466 (S.D.Tex.))**

*2 After the case was reassigned to this Court's docket, a new scheduling order was entered establishing August 31, 2009, as the deadline for amendments to pleadings.[FN1] *See* Docket Control Order [Doc. # 26]. On the August 31, 2009, deadline, Plaintiff filed a Second Amended Complaint [Doc. # 39]. In the Second Amended Complaint, Plaintiff presented the same factual allegations contained in the First Amended Complaint. Plaintiff reasserted the breach of contract claim regarding the Offer Letter, the breach of contract claim regarding an alleged breach of the Plan, and the ERISA claim for benefits.

> FN1. Prior to reassignment of the case, the deadline for amendments to pleadings was June 5, 2009. *See* Docket Control Order [Doc. # 18].

On March 11, 2010, more than six months after the amendments deadline expired and three days before the close of discovery, Plaintiff filed his Motion to Amend. Plaintiff seeks to "clarify his pleadings," to add an allegation that there was a lack of consideration for the waiver, and to add a common law fraud claim based on alleged misrepresentations made by ConocoPhillips to induce Plaintiff to sign the waiver. The Motion to Amend has been fully briefed and is ripe for decision.

## II. *RULE 16 STANDARD*

Where a scheduling order has been entered establishing a deadline for amendments to pleadings, <u>Federal Rule of Civil Procedure 16(b)</u> provides the standard for requests to amend after a scheduling order's deadline has expired. *Marathon Financial Ins., Inc. v. Ford Motor Co.,* 591 F.3d 458, 470 (5th Cir.2009); *Fahim v. Marriott Hotel Servs., Inc.,* 551 F.3d 344, 348 (5th Cir.2008). "<u>Rule 16(b)</u> provides that once a scheduling order has been entered, it 'may be modified only for good cause and with the judge's consent.' " *Marathon,* 591 F.3d at 470 (quoting <u>FED. R. CIV. P. 16(b)</u>). <u>Rule 16(b)</u> requires a party "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Id.* (quoting *S & W Enters., LLC v. Southtrust Bank of Ala., NA,* 315 F.3d 533, 535 (5th Cir.2003)). To determine whether the moving party has established good cause, the Court considers the following four factors: "(1) the explanation for the failure to timely

move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* (quoting *Sw. Bell Tel. Co. v. City of El Paso,* 346 F.3d 541, 546 (5th Cir.2003)).

## III. *ANALYSIS*

### A. *Explanation for Failure to Amend By Deadline*

In the Motion to Amend, Plaintiff offers no explanation for his failure to include the proposed amendments in the Second Amended Complaint filed by the August 31, 2009, deadline.

In his Reply, Plaintiff repeatedly concedes that he has known-since before he filed the Original Petition-the facts and legal theories which he now seeks to add through the Third Amended Complaint. *See, e.g.,* Reply, p. 7 ("none of the facts or theories Clayton has raised in his proposed amended complaint are new but rather are the same as detailed in his submissions before the administrator"); pp. 8-9 (the proposed fraud claim "focuses on the facts on which Clayton has always intended to base his claims"); p. 15 ("Clayton laid out the same facts and theories that form his Third Amended Complaint in extensive detail throughout the administrative process in this case").

*3 "In the context of a motion for leave to amend, the court may deny the motion if the movant 'knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint.' " *Udoewa v. Plus4 Credit Union,* 2010 WL 1169963, *2 (S.D.Tex. Mar.23, 2010) (quoting *Pallottino v. City of Rio Rancho,* 31 F.3d 1023, 1027 (10th Cir.1994), and citing *Pope v. MCI Telecomms. Corp.,* 937 F.2d 258, 263 (5th Cir.1991) (denying, under Rule 15(a)'s more lenient standard, a late-filed motion to amend a complaint to include claims based on same facts); *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1419 (11th Cir.1998) (denying leave to amend under <u>Rule 16(b)</u> when facts were known to plaintiff at time of first complaint); *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340-41 (2d Cir.2000) (denying leave to amend under <u>Rule 16(b)</u> where plaintiff "had all the information necessary" to support the new claim at the time he filed the lawsuit). As a result, these admissions regarding Plaintiff's prior knowledge provide a clear basis to deny the Motion to Amend.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1463466 (S.D.Tex.)
**(Cite as: 2010 WL 1463466 (S.D.Tex.))**

Plaintiff asserts in the Reply, however, that the Motion to Amend was late by more than six months because Plaintiff now believes that ConocoPhillips is misreading the Second Amended Complaint. It is unclear how ConocoPhillips's reading of the Second Amended Complaint, whether accurate or inaccurate, explains Plaintiff's significant delay in seeking to add a new fraud claim and a new allegation of lack of consideration that are not in the Second Amended Complaint at all.

Plaintiff has conceded that he has known the factual and legal basis for his proposed amendment since the administrative proceedings before the lawsuit was filed. Plaintiff offers no reasonable explanation for not including those new claims in the Original Petition, the First Amended Complaint, or the Second Amended Complaint. This factor weighs heavily against allowing the untimely amendment. Indeed, Plaintiff's knowledge of the facts and legal theories before he filed the Original Petition is an adequate basis for the Court to exercise its discretion to deny the Motion to Amend.

**B. *Importance of the Amendment***

The proposed amendment is not important to the extent Plaintiff seeks to "clarify" his claims. Plaintiff maintains that the Second Amended Complaint accurately sets forth his breach of contract claims. If Plaintiff is correct, his assumption that Defendants misunderstand those claims does not require Plaintiff to amend, particularly at this late date. If, on the other hand, Defendants are correct and Plaintiff has not included certain aspects of the breach of contract claims in the Second Amended Complaint, the amendment may be more important to Plaintiff.

The proposed addition of the lack of consideration and fraudulent inducement claims are, apparently, important to Plaintiff. Defendants argue, however, that the proposed addition of the fraud claim is futile because the claim would be preempted by ERISA. Although the Court reaches no decision on the preemption issue at this point, the potential futility of the amendment reduces its importance to Plaintiff.

*\*4 The "importance" factor weighs slightly in favor of allowing the proposed Third Amended Complaint.

**C. *Potential Prejudice in Allowing the Amendment***

Defendants will suffer significant prejudice if Plaintiff is granted leave to amend to add the new claims. Defendants will suffer prejudice if Plaintiff is allowed to add the fraud claim because they will be required to litigate the preemption issue as to that claim, greatly increasing the time and expense required to defend this case.

Defendants will also be prejudiced because the discovery deadline expired three days after the Motion to Amend was filed. Defendants conducted months of discovery based on the allegations in Plaintiff's Second Amended Complaint and should not be required to conduct additional discovery, including redoing discovery already completed, to address the new, untimely claims.

Defendants will also be prejudiced because the motions deadline is in approximately one week. Defendants cannot be expected to conduct discovery and adequately complete dispositive motions in that one week time period.

This "prejudice" factor weighs heavily against allowing the Third Amended Complaint.

**D. *Availability of Continuance to Cure Prejudice***

The prejudice related to litigating the preemption issue and conducting additional, repetitious discovery cannot be cured by extending the current deadlines.

To the extent the prejudice related to the expiration of the discovery period and the imminent deadline for motions could be cured by a continuance, the Court has "broad discretion to preserve the integrity and purpose of the pretrial order." *S & W Enters.*, 315 F.3d at 535 (citations omitted). The Court in this case exercises that discretion to preserve the integrity of the current Docket Control Order and, therefore, declines to extend the discovery and motions deadlines.

**IV. *CONCLUSION AND ORDER***

Although the "importance" factor weighs slightly in Plaintiff's favor, the other three factors weigh heavily against allowing the Third Amended Complaint.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1463466 (S.D.Tex.)
**(Cite as: 2010 WL 1463466 (S.D.Tex.))**

Plaintiff has failed to show good cause for the Court to modify its docket control order and permit the significantly late amendment. As a result, it is hereby

**ORDERED** that Plaintiff's Motion to Amend [Doc. # 56] is **DENIED** and the Third Amended Complaint [Doc. # 57] is **STRICKEN** .

S.D.Tex.,2010.
Clayton v. Conocophillips Co.
Slip Copy, 2010 WL 1463466 (S.D.Tex.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw

Slip Copy, 2009 WL 3526648 (M.D.Ga.)
**(Cite as: 2009 WL 3526648 (M.D.Ga.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
M.D. Georgia,
Columbus Division.
COLUMBUS BANK & TRUST CO. f/d/b/a Synovus
Leasing Company and d/b/a Synovus Capital Finance,
Plaintiff,
v.
McKENZIE TRUCKING & LEASING LLC, Steve
A. McKenzie, Brian E. Allsmiller, Daniel C. Trott,
William S. Campbell, and Greg L. Steele, Defendants.
**No. 4:07-CV-189 (CDL).**

Oct. 23, 2009.

West KeySummary
**Federal Civil Procedure 170A ⬅︎845**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(E) Amendments
         170Ak844 Answer
            170Ak845 k. Time for Amendment.
Most Cited Cases
Defendant was denied his motion to amend his answer
to strike his admission that he executed a personal
guaranty under a lease agreement. The bank brought
an action against the defendant to recover payment
obligations under a lease agreement, and the defendant
sought to amend his original answer to repudiate and
contradict his previously made express admissions of
fact. The defendant, however, filed his motion to
amend eighteen months after he filed the original
answer, and allowing the amendment would further
cause the bank to suffer undue prejudice. Fed.Rules
Civ.Proc.Rule 15(a), 28 U.S.C.A.

Amanda M. Beckett, David A. Elliott, Matthew T.
Mitchell, Michael L. Hall, Birmingham, AL, Erich N.
Durlacher, Atlanta, GA, Robert C. Brand, Jr., Page
Scrantom Sprouse Tucker & Ford PC, Columbus, GA,
for Plaintiff.

L. Blair Bennington, Thomas E. Ray, Chattanooga,
TN, William Crawford Rumer, Columbus, GA, for
Defendants.

*ORDER*

CLAY D. LAND, District Judge.

**\*1** This action arises from the alleged failure of Wil-
liam S. Campbell ("Campbell" or "Defendant") and
other defendants to satisfy their payment obligations
under a lease agreement with Columbus Bank & Trust
Co., f/d/b/a Synovus Leasing Co. and d/b/a Synovus
Capital Finance ("Synovus" or "Plaintiff"). Since the
commencement of this action, all other defendants
except Campbell have expressly acknowledged their
default on their payment obligations under the lease
agreement and related guaranties. As a result, the
Court has entered judgment against the other defen-
dants in the amount of $11,512,003.00. Plaintiff now
seeks summary judgment against Campbell, con-
tending that he is identically situated to the other de-
fendants and is likewise liable as a matter of law for
the claims asserted against him.

Campbell denies that he has any personal liability
based on his present contention that he did not execute
the personal guaranty upon which Plaintiff relies in
support of its motion for summary judgment. Camp-
bell maintains this position notwithstanding the
undisputed fact that he admitted in his Answer to Plain-
tiff's Complaint and in his responses to Plaintiff's
requests for admissions that he did in fact execute the
applicable guaranty. Recognizing the inconsistency
between his present position made in response to
Plaintiff's motion for summary judgment and his pre-
vious admissions *in judicio,* Campbell now seeks to
amend his Answer and his admissions.

As explained in more detail below, based upon
Campbell's inexcusable delay in seeking to amend his
Answer and the undue prejudice that an untimely
amendment would cause Plaintiff, the Court denies
Campbell's Motion to Amend his Answer (Doc. 71).
This ruling makes Campbell's Motion to Amend his
Responses to Plaintiff's Requests for Admissions
(Doc. 74) moot. In light of Campbell's binding ad-
mission *in judicio* in his Answer, Plaintiff is entitled to
summary judgment, so Plaintiff's Motion for Sum-
mary Judgment (Doc. 68) is granted.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3526648 (M.D.Ga.)
**(Cite as: 2009 WL 3526648 (M.D.Ga.))**

FACTUAL BACKGROUND

On December 23, 2004, Synovus entered into a Master Lease Agreement with Resource Leasing Services, LLC. Under the Master Lease Agreement, Resource Leasing agreed to lease or finance the purchase of "Equipment" from Synovus pursuant to schedules periodically executed by the parties.[FN1] (Ex. B to Pl.'s Mot. for Summ. J. ¶ 1.) Synovus and Resource Leasing entered into Schedules 8, 9, and 10 on August 15, 2006, November 30, 2006, and December 28, 2006 respectively. Under each of these Schedules, Synovus and Resource Leasing agreed that Resource Leasing would lease or finance the purchase of various pieces of equipment from Synovus in exchange for monthly payments. (*See generally* Exs. C, D, & E to Pl.'s Mot. for Summ. J.)

> FN1. The Master Lease Agreement granted Synovus an ownership interest or a first priority security interest in the "Equipment" referred to in the Master Lease Agreement. (Ex. B to Pl.'s Mot. for Summ. J. ¶ 9.) This "Equipment" included large trucks and related machinery, as well as accounts receivable, documents, and payment rights arising out of the sale, lease, or disposition of the trucks. (*E.g.*, Ex. C to Pl.'s Mot. for Summ. J. 3.)

On December 29, 2006, Resource Leasing and Defendant McKenzie Trucking entered into an Assignment and Assumption Agreement ("Assignment Agreement"). Under the Assignment Agreement, Resource Leasing assigned to McKenzie Trucking all of its rights and obligations under the Master Lease Agreement and the associated Schedules. (Ex. F to Pl.'s Mot. for Summ. J. 2 ¶ 3.)

**\*2** On January 16, 2007, Synovus and McKenzie Trucking entered into an Assignment of Interest in Sub-Lease Agreements ("Sub-Lease Assignment"). Under the Sub-Lease Assignment, McKenzie Trucking assigned Synovus its right, title, and interest under certain sub-lease agreements. (Ex. G to Pl.'s Mot. for Summ. J. 1-2.) Between December 29, 2006 and January 4, 2007, Defendants Steve A. McKenzie, Brian E. Allsmiller, Daniel C. Trott, and Greg L. Steele (collectively, "Undisputed Guarantors") executed guaranties that jointly, severally, and uncondi-

tionally guarantied McKenzie Trucking's obligations to Synovus under the Master Lease Agreement and the accompanying Schedules. (*See, e.g.,* Ex. H to Pl.'s Mot. for Summ. J. ¶ I.) Synovus contends that Campbell executed an identical guaranty ("Guaranty") during the same time period. (Pl.'s Mem. in Supp. of Mot. for Summ. J. 4.) Campbell denies executing the Guaranty. (Def.'s Resp. to Pl.'s Statement of Material Facts 3.)

On April 25 and 26, 2007, Synovus and McKenzie Trucking entered into Schedules 11, 12, and 13. Like Schedules 8-10, Schedules 11-13 obligated McKenzie Trucking to lease or finance the purchase of equipment from Synovus in exchange for monthly payments. (Exs. I, J, & K to Pl.'s Mot. for Summ. J.)

In the fall of 2007, McKenzie Trucking defaulted under the Master Lease Agreement when it became more than ten days past due on its obligations under Schedules 8-13. On November 6, 2007, Synovus demanded payment of the total amount due under the Master Lease Agreement and Schedules. (Ex. L to Pl.'s Mot. for Summ. J.) McKenzie Trucking failed to satisfy its past due obligations, and it apparently stopped making the payments due under the Master Lease Agreement and the Schedules altogether. (*See, e.g.,* Ex. Q to Pl .'s Mot. for Summ. J. 4.) On November 21, 2007, Synovus filed its Complaint in the State Court of Muscogee County alleging that McKenzie Trucking, the Undisputed Guarantors, and Campbell were liable for breaching the provisions of the Master Lease Agreement and the Schedules. (*See* Ex. M to Pl.'s Mot. for Summ. J.) Defendants removed the case to this Court on December 27, 2007.

In its Complaint, Synovus alleged that "[o]n December 29, 2006, Campbell executed a guaranty wherein he jointly and severally guaranteed any and all debts or obligations of McKenzie Trucking to [Synovus]." (Ex. M to Pl. Mot. for Summ. J. ¶ 17.) On February 5, 2008, Campbell filed his Answer to the Complaint, admitting that he executed the Guaranty.[FN2] (Campbell Answer ¶ 17.)

> FN2. Campbell later confirmed in his March 5, 2009 deposition that he reviewed his Answer before his attorney filed it, that he agreed with the Answer's substance, and that in the Answer he admitted that he signed the Guaranty. (Campbell Dep. 61:18-62:7,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3526648 (M.D.Ga.)
**(Cite as: 2009 WL 3526648 (M.D.Ga.))**

65:12-15, Mar. 5, 2009.)

> Campbell also testified during his deposition that he did not recall signing the Guaranty. (*Id.* at 55:6-9, 88:6-7, 95:3-13.) Campbell admitted, however, that the signature on the Guaranty looks very similar to his normal signature and that he is not aware of anyone forging his signature on the Guaranty. (*Id.* at 93:1-95:2.) Campbell also affirmed that if he did in fact sign the Guaranty, he is obligated under the McKenzie Trucking indebtedness to Synovus. (*Id.* at 95:14-19.)

On April 22, 2008, Synovus propounded Plaintiff's First Continuing Request for Admissions to Defendant William S. Campbell ("Requests for Admissions"). (Ex. P to Pl.'s Mot. for Summ. J.) Campbell responded to Synovus's Requests for Admissions on May 16, 2008, and admitted that a true and correct copy of the Guaranty was attached to the Complaint as Exhibit "J", that he executed the Guaranty, and that he agreed to be bound by its terms. (Ex. D to Def.'s Resp. to Pl.'s Mot. for Summ. J. ¶¶ 1-2.) Also on May 16, 2008, Synovus and McKenzie Trucking entered into a Forbearance Agreement, in which McKenzie Trucking expressly acknowledged its default under the Master Lease Agreement and that it owed Synovus $11,850,503.94 plus attorney's fees, litigation costs, and other continually accruing charges. (Ex. Q to Pl.'s Mot. for Summ. J. 5 ¶¶ 1-3.) In conjunction with the Forbearance Agreement, each of the Acknowledgment, Guaranties for Undisputed Guarantors executed a Guarantor acknowledging that they were in default of their failure to satisfy McKenzie Trucking's payment obligations to Synovus. (*E.g.*, Ex. R to Pl.'s Mot. for Summ. J. 3 ¶¶ 1-2.)

**\*3** Thereafter, McKenzie Trucking defaulted on its obligations under the Forbearance Agreement, and Synovus filed a motion for summary judgment on its claims against McKenzie Trucking and the Undisputed Guarantors. On October 2, 2008, the Court granted the motion for summary judgment and directed the Clerk to enter a judgment in favor of Synovus against McKenzie Trucking and the Undisputed Guarantors in the amount of $11,512,003.00. *Columbus Bank & Trust Co. v. McKenzie Trucking & Leasing LLC*, No. 4: 07-CV-189 (CDL), 2008 WL 4500053, at * 6 (M.D.Ga. Oct. 2, 2008). On June 26,

2009, Synovus filed its presently pending motion for summary judgment on its contractual claims against Campbell as guarantor of McKenzie Trucking's payment obligation to Synovus. On August 20, 2009, Campbell filed a motion to amend his Answer and a motion to withdraw and amend his responses to Synovus's Requests for Admissions.

### DISCUSSION

### I. Campbell's Motion for Leave to Amend His Answer

Campbell seeks leave to amend his Answer to strike his admission that he executed the Guaranty, to deny that he executed the Guaranty, and to deny that it was his signature on the document Plaintiff contends is Campbell's Guaranty. (Def.'s Mot. to Amend Answer 1.) For the following reasons, the Court denies Defendant's motion to amend his Answer.

### A. Binding Effect of Campbell's Factual Admission

In its evaluation of Campbell's motion to amend his Answer, the Court finds it important to emphasize that Campbell seeks to amend his Answer in a manner that would result in the withdrawal of a binding admission *in judicio* that he executed the Guaranty. Campbell does not seek to amend his Answer to correct a mistake, add an additional defense, or modify the legal theory of his defense, as is common practice under Federal Rule of Civil Procedure 15(a). *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure 2d § 1473* ("The function of Rule overlooked or were unknown at the time he interposed the original complaint or answer."). Instead, Campbell seeks a fundamentally different type of amendment: to repudiate and contradict his Answer's express admission of fact. Therefore, the Court finds it appropriate preliminarily to analyze the binding effect of Campbell's factual admission, in his Answer, that he executed the Guaranty.

It is well-settled law that admissions in an answer are deemed judicial admissions, binding on the party who makes them. *See Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir.1983) ( "[A] party is bound by the admissions in his pleadings."); *see also Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir.1990) ("[A]dmissions in the pleadings ... are in the nature of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3526648 (M.D.Ga.)
**(Cite as: 2009 WL 3526648 (M.D.Ga.))**

judicial admissions binding upon the parties, unless withdrawn or amended." (second alteration in original; internal quotation marks omitted). "[J]udicial admissions are proof possessing the highest possible probative value. Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Best Canvas Prods.,* 713 F.2d at 621 (internal quotation marks omitted). Consequently, where a defendant admits a particular fact in his answer, he is estopped to deny it later. *United States ex rel. Stanley v. Wimbish,* 154 F.2d 773, 774 (4th Cir.1946); *see also Davis v. A.G. Edwards & Sons, Inc.,* 823 F.2d 105, 108 (5th Cir.1984) (per curiam) ("[F]actual assertions in pleadings are ... judicial admissions *conclusively* binding on the party that made them. Facts that are admitted in the pleadings are no longer at issue." (alterations in original; citations and internal quotation marks omitted)). "Even if the post-pleading evidence conflicts with the evidence in the pleadings, admissions in the pleadings *are binding on the parties and may support summary judgment against the party making such admissions." Mo. Hous. Dev. Comm'n,* 919 F.2d at 1314 (emphasis added); *see also Davis,* 823 F.2d at 108 (holding that plaintiffs were bound by admissions in pleadings and that no factual issue was created by plaintiff's subsequent, contradictory affidavit).

**\*4** The present circumstances are nearly identical to those in *Missouri Housing Development Commission v. Brice,* 919 F.2d 1306 (8th Cir.1990). There, the defendant, one of several alleged note guarantors, moved to amend his answer, in which he admitted executing the guaranty, to repudiate his earlier admission and deny executing the guaranty. *See id.* at 1314. After filing his answer, the defendant denied signing the guaranty in his responses to plaintiff's written discovery requests and during his deposition. *Id.* at 1308. The Eighth Circuit held that despite the defendant's post-pleading evidence contradicting his answer, the defendant remained bound by his answer admission that he signed the guaranty. *Id.* at 1314-15.

Just as in *Missouri Housing Development Commission,* here Campbell expressly admitted executing the Guaranty in his Answer and then repudiated (or, at least cast doubt upon) his Answer admission in his subsequent deposition *(see, e.g.,* Campbell Dep. 55:6-9, 91:10-14) and discovery responses (Ex. A to Def.'s Resp. to Pl.'s Mot. for Summ. J. 7 ¶ 7). Also, as

in *Missouri Housing Development Commission,* here Campbell produced post-pleading evidence which he claims contradicts his earlier admissions.[FN3] The Court finds the Eighth Circuit's *Missouri Housing Development Commission* reasoning to be persuasive, and the Court accordingly holds that Campbell's Answer admissions are binding, unless the Court finds that the circumstances warrant the withdrawal of the admission through amendment of Campbell's Answer.

> FN3. Without expressing an opinion on their weight or validity, the Court notes that Campbell produced an affidavit stating he has "no recollection of signing the subject guaranty of the Synovus loan" and a credit card record which shows charges outside his hometown of Cleveland, Tennessee on the Guaranty execution date. (Campbell Aff. ¶ 10, Aug. 14, 2009; *id.* ¶ 16 & Attach. to Campbell Aff.)

*B. Rule 15(a) Motion to Amend Standard*

"Even an obviously binding admission, of course, may be amended under Fed.R.Civ.P. 15." *Mo. Hous. Dev. Comm'n,* 919 F.2d at 1316. Unless a party is entitled to amend his pleading as a matter of course under Rule 15(a)(1), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). Rule 15(a)(2) directs that "[t]he court should freely give leave when justice so requires." However, "[t]he decision whether to grant leave to amend is committed to the sound discretion of the trial court."[FN4] *Shipner v. E. Air Lines, Inc.,* 868 F.2d 401, 406 (11th Cir.1989); *see also Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1270 (11th Cir.2006); *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Therefore, while leave to amend is freely granted when justice so requires, the Eleventh Circuit has made clear that it "is not an automatic right." *Reese v. Herbert,* 527 F.3d 1253, 1263 (11th Cir.2008) (internal quotation marks omitted); *Layfield v. Bill Heard Chevrolet Co.,* 607 F.2d 1097, 1099 (5th Cir.1979) (per curiam) ("[L]eave to amend is by no means automatic.").[FN5]

> FN4. The district court's discretion to grant or refuse leave to amend derives from "its inherent power to manage the conduct of litigation before it." *Reese v. Herbert,* 527 F.3d

Slip Copy, 2009 WL 3526648 (M.D.Ga.)
**(Cite as: 2009 WL 3526648 (M.D.Ga.))**

1253, 1263 (11th Cir.2008). "While never specified in the Constitution or legislative enactments," the district court's common law "inherent powers" "assisted courts in exercising their enumerated judicial powers, such as managing their cases and courtrooms." *Id.* at 1263 n. 14 (citing *Byrne v. Nezhat,* 261 F.3d 1075, 1131 n. 110 (11th Cir.2001)).

FN5. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

In light of Rule 15(a)'s liberal approach to granting leave to amend, the Eleventh Circuit has generally required a substantial reason to justify denial of leave to amend. *Reese,* 527 F.3d at 1263; *Shipner,* 868 F.2d at 407. Accordingly, a court may deny leave to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir.2001) (per curiam); *see also Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Consequently, when a movant's delay hinders judicial economy and prejudices his opponent, the burden shifts to the movant to show good cause to allow the amendment. *Best Canvas Prods.,* 713 F.2d at 623.

*C. Campbell's Undue Delay and Prejudice to Synovus*

*1. Undue Delay Hindering Judicial Economy*

**\*5** The strongest factor weighing against Campbell's motion to amend is his inexplicable delay in bringing his motion. Campbell correctly points out that "[m]ere delay in moving to amend a pleading will not generally justify denying a motion to amend." (Def.'s Mem. in Supp. of Mot. to Amend Answer 2.) However, as was explained by the Fifth Circuit Court of Appeals:

At some point in the course of litigation, an unjustified delay preceding a motion to amend goes beyond excusable neglect, even when there is no evidence of bad faith or dilatory motive. Liberality in pleading does not bestow on a litigant the privi-

lege of neglecting her case for a long period of time. While we must give a party a fair chance to present claims and defenses, we also must protect "a busy district court [from being] imposed upon by the presentation of theories seriatim."

*Daves v. Payless Cashways, Inc.,* 661 F.2d 1022, 1025 (5th Cir. Unit A Nov.1981) (alteration in original; citations and internal quotation marks omitted); *see also Paschal v. Fl. Pub. Employees Relations Comm'n,* 666 F.2d 1381, 1384 (11th Cir.1982) (per curiam) (holding that despite no evidence of bad faith or dilatory motive, unjustified delay coupled with some prejudice justified district court's denial of leave to amend).

Campbell filed his motion to amend on August 20, 2009-more than eighteen months after he filed his Answer, and nearly two months after Synovus filed its motion for summary judgment. The Court finds that such delay was unjustified. Apparently, after recognizing the likelihood of an adverse summary judgment ruling, Campbell now attempts to rescue his defense by amending his Answer to exclude his damaging admission that he executed the Guaranty. The Eleventh Circuit, however, has consistently approved the denial of just such motions to amend pleadings "when ... designed to avoid an impending adverse summary judgment." *Lowe's Home Ctrs., Inc. v. Olin Corp.,* 313 F.3d 1307, 1315 (11th Cir.2002) (citing *Local 472, etc. v. Ga. Power Co.,* 684 F.2d 721, 724 (11th Cir.1982)). Further, other courts, in the absence of good cause, have denied motions to amend an answer filed after a delay comparable to Campbell's. *See Baxter v. Fulton-Dekalb Hosp. Auth.,* 764 F.Supp. 1510, 1525 (N.D.Ga.1991) (denying motion to amend answer filed eight months after answer); *Alliance Metals, Inc. v. Hinely Indus., Inc.,* No. 1:96-CV-268, 1998 WL 34300554, at \*7 (N.D.Ga. Feb.19, 1998) (denying motion to amend answer filed two years after answer). Consequently, the Court finds that Campbell's motion to amend his Answer follows an unjustified delay and that allowing it would hinder judicial economy.

*2. Unfair Prejudice to Synovus*

The Court must also evaluate the prejudice to Synovus should Campbell's motion to amend be granted. During the eighteen-month delay between Campbell's Answer and his motion to amend, Synovus conducted

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3526648 (M.D.Ga.)
(Cite as: 2009 WL 3526648 (M.D.Ga.))

discovery, gathered evidence in support of its claim, and filed for summary judgment in reliance on Campbell's pleadings. More specifically, Synovus used Campbell's Answer admission that he executed the Guaranty as the foundation of its motion for summary judgment. (Pl.'s Mem. in Supp. of Summ. J. 10.) Consequently, allowing Campbell to amend his Answer at this late stage would prejudicially force Synovus to reshape the theory of its case for summary judgment. Cf. *Mo. Hous. Dev. Comm'n*, 919 F.2d at 1316 ("Plaintiff would have been prejudiced by allowing the amendment, because it had previously been placed on notice that the validity of all of the defendants' signatures to the guaranty was not at issue[.]"). To rectify this prejudice, the Court would have to allow Synovus to re-depose Campbell and conduct other discovery related to the authenticity of the signature on the Guaranty, and allow Synovus to re-file its motion for summary judgment. Each of these measures would prejudice Synovus, causing it additional trouble and expense. 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure 2d § 1487* ("[I]f the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial.").

*6 Campbell contends that Synovus would not be prejudiced by his amendment since Synovus was aware of Campbell's inability to recall executing the Guaranty and Campbell's suspicion of the circumstances surrounding the Guaranty signature prior to his deposition.[FN6] (Def.'s Reply in Supp. of Mot. to Amend Answer 2; Def.'s Mem. in Supp. of Mot. to Amend Answer 2.) Therefore, Campbell argues, Synovus "had ample opportunity to question Campbell about the signature on the guaranty and the reasons why Campbell disputes the authenticity of the signature." (Def.'s Reply in Supp. of Mot. to Amend Answer 2.)

> FN6. Campbell's contention that he questioned whether the signature was his since the time the Answer was filed is in direct conflict with the record. As evidence of Campbell's early suspicion, Campbell directs the Court to a February 8, 2008 letter from his former attorney to McKenzie Trucking's counsel. (Def.'s Reply in Supp. of Mot. to

Amend Answer 1.) The February 8, 2008 letter was written just three days after Campbell filed his Answer (see Ex. A to Def.'s Mot. to Amend Answer), which, Campbell testified, he reviewed and agreed with (Campbell Dep. 61:18-62:7). Moreover, the February 8, 2008 letter was written three months *before* Campbell responded to Plaintiff's Request for Admissions, admitting that he "agreed to be bound by the terms of the Guaranty by executing the same." (Ex. D to Def.'s Resp. to Pl.'s Mot. for Summ. J. ¶ 2.) Synovus was reasonable and justified in relying upon the judicial admissions in Campbell's Answer over contradictory extrajudicial statements.

It is undisputed that Synovus was aware of Campbell's memory lapse and suspicions prior to Campbell's deposition. (See Ex. A to Def.'s Resp. to Pl.'s Mot. for Summ. J. 7 ¶ 7; Campbell Dep. 55:8-13.) Also, Synovus acknowledged Campbell's "doubts" about his Guaranty signature in its motion for summary judgment. (See Pl.'s Mem. in Supp. of Summ. J. 7.) Campbell's doubts, however, do not equal a denial.

Prior to Campbell's motion to amend, he never affirmatively denied executing the Guaranty. Rather, Campbell only testified that he could not remember signing the Guaranty (Campbell Dep. 88:2-7; Campbell Aff. ¶ 10, Aug. 14, 2009), that he found the circumstances surrounding the Guaranty signature suspect (Campbell Dep. 64:6-12, 89:1-90:9, 91:15-19, 95:3-6; Ex. A to Def.'s Resp. to Pl.'s Mot. for Summ. J. 7 ¶ 7), and that he *may* be denying that it was his signature on the Guaranty (Campbell Dep. 91:10-14). Even when directly asked by Synovus's counsel whether he denied guarantying the Synovus note, Campbell would only state that "[t]here is question in my mind whether I guaranteed the Synovus [note]." (*Id.* at 55:6-9.)

On the other hand, and more importantly, while Campbell vaguely asserted memory lapses and suspicions in his deposition and discovery responses, he never altered his Answer, which affirmatively stated that he executed the Guaranty. Cf. *Mo. Hous. Dev. Comm'n*, 919 F.2d at 1314, 1316-17 (affirming denial of motion to amend answer where defendant repudiated his answer admission in his deposition and discovery responses but did not bring repudiation to

Slip Copy, 2009 WL 3526648 (M.D.Ga.)
**(Cite as: 2009 WL 3526648 (M.D.Ga.))**

district court's attention until after adversary's summary judgment motion was decided). To the contrary, Campbell affirmed during his deposition that he reviewed the Answer before his attorney filed it, and that he agreed with the content. (Campbell Dep. 61:18-62:7.) Further, Campbell testified that the Guaranty signature looked very similar to his normal signature and that he was not aware of anyone forging his signature. (*Id.* at 93:10-22, 94:21-95:2.) Only after Synovus filed its motion for summary judgment did Campbell decide to inform Synovus, and the Court, that he disavows the judicial admissions in his Answer. Synovus was justified in its reliance upon Campbell's Answer that he executed the Guaranty. Consequently, allowing the amendment to Campbell's Answer would cause Synovus undue prejudice.

*D. Campbell Fails to Show Good Cause for Amendment*

**\*7** Campbell's excuses for his delay are unpersuasive. First, he claims he needed "investigation and discovery" to determine whether he actually executed the Guaranty. Second, Campbell maintains that he was lulled into inaction by the Synovus-McKenzie Trucking Forbearance Agreement he believed would resolve this dispute. Neither excuse rings true.

When the movant, at the time he filed his answer, knew of the facts upon which he now relies in support of his motion to amend, the Court is authorized to disallow the amendment. *See Nat'l Serv. Indus., Inc. v. Vafla Corp.,* 694 F.2d 246, 249 (11th Cir.1982) ("There was no abuse of discretion where the facts supporting the proposed [amendment] were known at the time of the original answer ...."); *see also Reese,* 527 F.3d at 1263-64 (affirming denial of motion to amend pleadings where evidence upon which movant based its amendment was essentially known to movant at time he filed original pleading). Here, Campbell disingenuously suggests that he did not know, when he filed his original Answer, that he did not sign the Guaranty. In support of this suggestion, he maintains that he "question[ed] whether the signature was his" from the very beginning. (Def.'s Reply in Supp. of Mot. to Amend Answer 1.) He does not explain, however, why he nevertheless unequivocally admitted to signing the Guaranty in his Answer, expressing no reservations at that time. He maintains that only after "investigation and discovery" did he realize *his own* credit card records showed charges from outside his

hometown of Cleveland, Tennessee on the date the Guaranty was purportedly executed.[FN7]

> FN7. Campbell produced a credit card record for Deborah S. Campbell. (Campbell Aff. ¶ 16 & Attach. to Campbell Aff.) Consistent with Campbell's contention, the Court assumes the credit card record is for a jointly held family credit card. The Court here expresses no opinion as to the record's probative value because its substance is irrelevant to this portion of the Order.

The Court is mystified and unpersuaded that it would take Campbell eighteen months of investigation and discovery to obtain his own credit card records. Those credit card records were either known to him or easily accessible at the time he filed his Answer. The only other evidence underlying Campbell's present contention that he did not execute the Guaranty (the absence of a notary seal, the differing guaranty dates, his allegation others sometimes signed his name, and his inability to recall signing the Guaranty) was also known to Campbell through his own personal experience or available to him through Complaint exhibits when he filed his Answer. Therefore, since all the evidence upon which Campbell relies in support of his excuse that he needed time for "investigation and discovery" was available to him when he filed his Answer, the Court finds Campbell's excuse unpersuasive.

In support of his second excuse for his delay, Campbell argues "that at the time Campbell's Answer was filed the Plaintiff had entered into a forbearance agreement with the other defendants [and it] did not appear that the Plaintiff was going to be pursuing this action against Campbell." (Def.'s Reply in Supp. of Mot. to Amend Answer 1-2.) Campbell's contention is factually inaccurate and unpersuasive. Campbell filed his Answer on February 5, 2008. Synovus entered into the Forbearance Agreement with McKenzie Trucking on May 16, 2008, over three months later. Thus, the Forbearance Agreement could not have influenced Campbell's perception of Synovus's litigation intentions at the time Campbell filed his Answer because the Forbearance Agreement did not yet exist.

**\*8** More importantly, the existence of the Forbearance Agreement could only possibly explain less than two months of Campbell's eighteen-month delay in mov-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3526648 (M.D.Ga.)
(Cite as: 2009 WL 3526648 (M.D.Ga.))

ing to amend. The Forbearance Agreement was signed on May 16, 2008 and breached by McKenzie Trucking on July 11, 2008. Campbell did not move to amend his Answer until August 20, 2009. Thus, any reliance Campbell placed on the Forbearance Agreement cannot explain why he waited more than a year after termination of the Forbearance Agreement to file his motion to amend his Answer.

Campbell has failed to provide any reasonable basis for excusing his undue delay in seeking to amend his Answer. Consequently, based upon this undue delay and the prejudice to Synovus should Campbell's amendment be allowed, the Court denies Campbell's motion to amend his Answer.[FN8] See _Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co._, 470 F.3d 1036, 1041-42 (11th Cir.2006) (per curiam) (upholding denial of motion to amend where district court found delay and lack of good cause for delay); _Paschal_, 666 F.2d at 1384 (affirming denial of leave to amend where unjustified delay was coupled with some prejudice to adversary).

> FN8. Three months after Campbell's Answer admission that he executed the Guaranty, Campbell again admitted in his response to Synovus's Request for Admissions that he "agreed to be bound by the terms of the Guaranty by executing the same." (Ex. D to Def.'s Resp. to Pl.'s Mot. for Summ. J. ¶ 2.) To disclaim this second express admission that he executed the Guaranty, Campbell also filed a motion to withdraw and amend his response to Synovus's Request for Admissions. Since Campbell's binding Answer admission conclusively established that he executed the Guaranty, Campbell's motion to withdraw and amend his response to Synovus's Request for Admissions is moot.

## II. Synovus's Motion for Summary Judgment

Based on Campbell's admission in his Answer that he executed the Guaranty, that fact is conclusively established. Therefore, as explained below, Synovus is entitled to summary judgment as to its claim against Campbell.

### A. Summary Judgment Standard

Summary judgment may be granted only "if the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When a party moves for summary judgment, it is the movant's burden to show that there is no genuine issue of material fact. _Celotex Corp. v. Catrett_, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant is entitled to summary judgment if, after construing the evidence in the light most favorable to the non-moving party and drawing all justifiable inferences in its favor, no genuine issues of material fact remain to be tried. Fed.R.Civ.P. 56(c); _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it is relevant or necessary to the outcome of the suit. _Anderson_, 477 U.S. at 248. A factual dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. _Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); accord _Anderson_, 477 U.S. at 248.

### B. Synovus's Summary Judgment Claim Against Campbell

In an action to recover sums owed under a promissory note or a guaranty, a movant may establish a right to judgment as a matter of law by producing the relevant loan documents, showing that they were executed by the debtor, and by showing that the note or guaranty is in default.[FN9] E.g., _Vandegriff v. Hamilton_, 238 Ga.App. 603, 603, 519 S.E.2d 702, 703 (1999); see also _Citizens Bank, Douglasville v. Wix_, 154 Ga.App. 249, 249, 267 S.E.2d 856, 857 (1980) ("Since the defendant admitted executing the note in question ... and since the note, on its face, shows that it is past due and in default, plaintiff established a prima facie right to judgment."). Here, Synovus produced the Master Lease Agreement and Guaranty as exhibits to its motion for summary judgment (Exs. B & H to Pl.'s Mot. for Summ. J.), and it is undisputed that the Master Lease Agreement and guaranties thereof are in default, _Columbus Bank & Trust Co._, 2008 WL 4500053, at *2. Therefore, Synovus is entitled to judgment as a matter of law if it can demonstrate "there is no genuine issue of material fact" as to whether Campbell executed the Guaranty.[FN10]

> FN9. The Guaranty contains a choice of law provision designating the governing law as

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3526648 (M.D.Ga.)
**(Cite as: 2009 WL 3526648 (M.D.Ga.))**

that of the state of Georgia. (*See* Ex. H to Pl .'s Mot. for Summ. J. ¶ 4.) Neither party appears to contest that Georgia's law governs the Guaranty, so the Court will apply Georgia law.

FN10. Campbell admits that if he signed the Guaranty, he is obligated under the McKenzie Trucking indebtedness to Synovus. (Campbell Dep. 95:14-19.)

*9 Here, Synovus has carried its burden to "show that there is no genuine issue of material fact" as to whether Campbell executed the Guaranty. By Campbell's admission in his Answer, this fact has been conclusively established. Thus, Campbell's subsequent attempt to controvert this undisputed fact is unavailing. Since no genuine issues of material fact remain regarding Campbell's liability, Synovus is entitled to summary judgment on its claim against him.

*C. Synovus's Damages*

The amount of Synovus's damages in this case is undisputed. As of June 23, 2009, the total remaining balance owed to Synovus under the Master Lease Agreement and respective Guaranties is $7,020,637.33. (Tikkanen Aff. ¶ 3, June 26, 2009.) Campbell did not contest this amount in his response to Synovus's motion for summary judgment. Additionally, the Master Lease Agreement and Guaranties contain an attorney's fees provision providing that Campbell, as a guarantor, is liable for Synovus's attorney's fees incurred in attempting to collect the amount owed under the Guaranty. (Ex. B to Pl.' s Mot. for Summ. J. ¶ 12; Ex. H to Pl.'s Mot. for Summ. J. ¶ 1.) The attorney's fees provision is valid and enforceable, O.C.G.A. § 13-1-11, and Campbell has not contested his liability under it. Further, Synovus complied with the statutory attorney's fees limit and notice requirements.FN11 (*See* Ex. L to Pl.'s Mot for Summ. J. 2.) Therefore, Campbell is also liable for Synovus's $618,328.77 in attorney's fees. In sum, Synovus's total damages as a result of Campbell's breach of the Master Lease Agreement and Guaranty are $7,638,966.10.

FN11. O.C.G.A. § 13-1-11(a)(1) provides that, where specified in the note or evidence of indebtedness, attorney's fees provisions

"shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness." Here, the $618,328.77 in attorney's fees Synovus incurred attempting to collect the $7,020,637.33 owed under the Guaranty falls well within the statute's 15% allowance.

CONCLUSION

As discussed above, the Court denies Campbell's Motion to Amend Answer (Doc. 71). In addition, the Court does not rule upon Campbell's Motion to Withdraw and Amend Responses to Requests for Admissions (Doc. 74) because that motion is moot in light of the Court's other rulings. The Court further finds no genuine issues of material fact that Campbell is obligated as a guarantor of the McKenzie Trucking indebtedness to Synovus. Accordingly, Synovus's Motion for Summary Judgment (Doc. 68) is granted. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Campbell accordingly.

IT IS SO ORDERED.

M.D.Ga.,2009.
Columbus Bank & Trust Co. v. McKenzie Trucking & Leasing LLC
Slip Copy, 2009 WL 3526648 (M.D.Ga.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2010 WL 2465009 (C.A.5 (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2010 WL 2465009 (C.A.5 (Tex.)))

Only the Westlaw citation is currently available.This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007.  See also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4. (Find CTA5 Rule 28 and Find CTA5 Rule 47)

United States Court of Appeals,
Fifth Circuit.
Mathai MUTTATHOTTIL, Plaintiff-Appellant
v.
GORDON H. MANSFIELD, Acting Secretary of Veterans Affairs, Department of Veterans Affairs, Defendant-Appellee.
No. 09-20493

June 17, 2010.

**Background:** Federal employee brought Title VII retaliation claim against federal agency employer. The United States District Court for the Southern District of Texas granted summary judgment in favor of employer. Employee appealed.

**Holdings:** The Court of Appeals held that:
(1) employee failed to state retaliation claims which were referenced in ALJ's separate decision, and
(2) employee did not suffer adverse employment action, as required to establish prima facie Title VII retaliation claim.

Affirmed.

West Headnotes

[1] Civil Rights 78 ☞1532

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1532 k. Pleading. Most Cited Cases

United States 393 ☞36

393 United States
    393I Government in General
        393k36 k. Appointment or Employment and Tenure of Agents, Clerks, and Employees in General.
Most Cited Cases
Federal employee's reference in Title VII complaint to separate ALJ decision and federal agency employer's inclusion of the ALJ opinion as an exhibit in its motion for summary judgment were insufficient to state Title VII retaliation claims which were purportedly referenced in the ALJ decision. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rule 10(c), 28 U.S.C.A.

[2] Civil Rights 78 ☞1249(1)

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights
            78k1249 Public Employment
                78k1249(1) k. In General. Most Cited Cases

United States 393 ☞36

393 United States
    393I Government in General
        393k36 k. Appointment or Employment and Tenure of Agents, Clerks, and Employees in General.
Most Cited Cases
Comment by supervisor that federal employee filed too many Equal Employment Opportunity (EEO) complaints was not itself "adverse employment action," as required for employee to establish prima facie claim of Title VII retaliation, where employee suffered no job loss, salary reduction, suspension, or other form of discipline. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).
Ajay Kumar Choudhary, Coane & Associates, Houston, TX, for Plaintiff-Appellant.

Nancy Cross Leonard, Assistant U.S. Attorney, U.S. Attorney's Office, Houston, TX, for Defendant-Appellee.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2465009 (C.A.5 (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2010 WL 2465009 (C.A.5 (Tex.)))**

Appeal from the United States District Court for the Southern District of Texas, USDC No. 4:07-CV-3797.

Before <u>JOLLY</u> and GARZA, Circuit Judges, and MILLER, District Judge <u>FN*</u>.

PER CURIAM: <u>FN**</u>

**\*1** Mathai Muttathottil appeals the district court's grant of summary judgment in favor of Gordon H. Mansfield, Acting Secretary of Veterans Affairs in the Department of Veterans Affairs (the "VA"), dismissing his retaliation claim brought under Title VII, <u>42 U.S.C. § 2000e-3(a)</u>. For the following reasons, we AFFIRM.

**I**

Muttathottil has been employed by the VA since 1984 as a medical technologist. He previously filed three Equal Employment Opportunity ("EEO") complaints, but subsequently withdrew all of the charges. Three years after his last filing of an EEO complaint, Muttathottil began having problems at work with a co-worker known as "JT." Muttathottil and JT had previously been close friends, but a quarrel between their families created a rift between the two men.

Muttathottil verbally complained on several occasions to Margaret Wooten, his supervisor, about JT's use of company phones to conduct personal calls. Apprised of these complaints, JT responded by twice complaining to Wooten that Muttathottil suffered from uncontrolled rage at work. Muttathottil reacted by filing a written complaint against JT, alleging that JT interrupted Muttathottil's work by "rushing towards" him. Pending investigation of the complaint, Muttathottil was moved to a different shift and instructed to avoid contact with JT.

After Muttathottil filed the last complaint, Wooten met with him and his union representative. At the meeting, Wooten requested that Muttathottil withdraw his written complaint and commented, "You filed too many EEO complaints." After the meeting, Wooten issued written counseling memoranda to both Muttathottil and JT, Muttathottil was returned to his original shift, and no further action was taken. As the counseling letters were not considered to be formal discipline, they were not placed in the employees' permanent personnel files.

Approximately six months later, Muttathottil filed another EEO complaint, asserting seven different bases for discrimination: race, age, color, sex, national origin, disability, and reprisal for prior EEO activity. After an administrative judge investigated and dismissed his complaint, Muttathottil filed suit alleging retaliation under Title VII based on Wooten's statement regarding his prior filing of EEO complaints. Muttathottil's complaint purported to "allege[ ] all of the retaliation claims that are referred to in the Administrative Judge's decision." However, the magistrate judge found that Muttathottil had properly pled only the single Title VII retaliation count and declined to address any of the other alleged grounds for relief in his report and recommendation, which advised granting the VA's summary judgment motion. Adopting the magistrate judge's report and recommendation in full, the district court granted summary judgment for the VA on the single count of retaliation based on Muttathottil's filing of EEO complaints.

**II**

We review a district court's grant of summary judgment de novo. <u>Condrey v. SunTrust Bank of Ga., 429 F.3d 556, 562 (5th Cir.2005)</u>. "Summary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Id.* (citation omitted). When reviewing a grant of summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)</u>.

**III**

**\*2** Muttathottil argues that the district court erred in failing to address claims presented to the Administrative Judge but not specifically pled in his complaint except by reference to the Administrative Judge's decision. Muttathottil contends there was no pleading deficiency, and even if there were, the district court should have granted Muttathottil leave to amend his complaint rather than dismissing the improperly pled claims outright. We discuss each of these arguments in turn.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2465009 (C.A.5 (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2010 WL 2465009 (C.A.5 (Tex.)))

## A

Muttathottil's complaint plainly states that he seeks relief for retaliation based on filing of EEO complaints. However, paragraph 25 of Muttathottil's complaint notes: "In addition, Plaintiff hereby alleges all of the retaliation claims that are referred to in the Administrative Judge's decision." Neither this decision nor the referenced claims were attached to the complaint, and consequently, the district court found them not to be part of the complaint, pursuant to FED.R.CIV.P. 10( c) and *Shelter Mutual Insurance Co. v. Public Water Supply District No. 7,* 747 F.2d 1195, 1198 (8th Cir.1984) ("A pleading incorporating allegations from other documents must clarify which statements are to be incorporated."). However, the VA attached the Administrative Judge's decision as Exhibit 2 of its motion for summary judgment. Muttathottil contends the permissive nature of Rule 10(c) does not require a plaintiff "to attach to her complaint documents upon which her action is based," and that instead "a defendant may introduce certain pertinent documents if the plaintiff failed to do so." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993). Thus, Muttathottil argues that the VA's inclusion of the Administrative Judge's opinion cures any deficiencies in his complaint.

Rule 10(c) states that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." This court has acknowledged that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir.2000). However, while Rule 10(c) "permits references to pleadings and exhibits in the same case, ... there is no rule permitting the adoption of a cross-claim in a *separate action in a different court* by mere reference." *Tex. Water Supply Corp. v. Reconstr. Fin. Corp.,* 204 F.2d 190, 196 (5th Cir.1953) (emphasis added). The administrative decision to which Muttathottil refers is a separate action heard before a different court, and therefore could not be pled by mere reference to the decision in its entirety.

[1] Of course, this case differs from *Texas Water*

*Supply* in that the VA was aware of the claims to which Muttathottil referred, and even litigated as if these claims were properly stated in the complaint. However, the *Texas Water Supply* court noted that "[t]he 'notice' theory of pleading cannot strike from Rule 8(a) ... the plain and definite requirement that 'A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Id.* (quoting FED. R. CIV. P . 8(a)); *see also Shelter Mut. Ins.,* 747 F.2d at 1198 (disapproving of a party's attempt to incorporate by reference a "lengthy" document incorporating "thirty-six pages of allegations" and noting that "[a] pleading incorporating allegations from other documents must clarify which statements are to be incorporated"). In other words, mere reference to a sixty-five-page administrative decision in which Muttathottil's additional claims are purportedly described is insufficient to meet Rule 8's pleading requirements.

*3 Thus, while the VA may have been on notice regarding the claims that Muttathottil seeks to incorporate, Muttathottil did not plead those claims within the four corners of his complaint, and the district court did not err in declining to address those claims in its summary judgment decision.

## B

Muttathottil contends in the alternative that he should have been given leave to amend his complaint rather than have his complaint dismissed outright. FED.R.CIV.P. 15(a)(2) provides that "[a] court should freely give leave" to amend pleadings "when justice so requires," but the decision to grant or deny leave to amend a complaint lies within the discretion of the district court. *Little v. Liquid Air Corp.,* 952 F.2d 841, 845 (5th Cir.1992), *rev'd on other grounds,* 37 F.3d 1069 (5th Cir.1994). In making this decision, a court may consider:

undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.

*Id.* (quoting *Foman v. Davis,* 371 U.S. 179 (1962)).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2465009 (C.A.5 (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2010 WL 2465009 (C.A.5 (Tex.)))**

In the instant matter, we have the unique situation wherein the VA believed the claims Muttathottil sought to incorporate from the EEO decision were properly pled in the complaint. Consequently, the record on these issues has been sufficiently developed for us to determine that none of these additional claims has merit. Because amendment of his complaint would have been futile, the district court did not err in declining to grant Muttathottil leave to amend his complaint to include these other claims. *See Halbert v. City of Sherman,* 33 F.3d 526, 530 (5th Cir.1994) (concluding that remand to consider plaintiff's additional claims would be "a waste of judicial resources" when the record demonstrated that the claims would "fail as a matter of law").

**IV**

Muttathottil argues that the district court erred in granting summary judgment against him on the merits of the retaliation claim pled in his complaint. Title VII's anti-retaliation clause forbids employer actions that discriminate against an employee because he has opposed an impermissible practice under Title VII or has participated in a Title VII proceeding. 42 U.S.C. § 2000e-3(a). "A plaintiff establishes a prima facie case for unlawful retaliation by proving (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Long v. Eastfield Coll.,* 88 F.3d 300, 304 (5th Cir.1996).

In *Burlington Northern & Santa Fe Railway. Co. v. White,* 548 U.S. 53, 67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), the Supreme Court noted that Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." The Supreme Court further noted that "material adversity" is distinct from "trivial harms." *Id.* at 68. A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.*

**\*4** **[2]** Muttathottil points to Wooten's statement that Muttathottil "filed too many EEO complaints" as a valid basis for the VA to be liable to him for retaliation. Muttathottil contends this statement might dissuade a worker from making future complaints, as the worker would be under the impression that Wooten

would not take these claims seriously. However, Muttathottil is presuming that Wooten's statement of opinion is, in and of itself, a retaliatory action. This interpretation of *Burlington Northern* is overbroad and would permit mere expressions of opinion by employers, without any subsequent retaliatory act, to form the basis for a retaliation cause of action, running the risk of intruding on the First Amendment's freedom-of-speech guarantees.

The doctrine of constitutional avoidance instructs a court to avoid statutory interpretations that create constitutional difficulty when a reasonable alternative is available. *See Clark v. Suarez Martinez,* 543 U.S. 371, 381-82, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005). Thus, in the instant matter, we interpret § 704(a) to prohibit threatened or actual retaliatory *action,* not mere speech. *See Holloway v. Dep't of Veterans Affairs,* 309 F. App'x 816, 819 (5th Cir.2009) (finding that a supervisor's criticism of an employee's EEO complaints did not constitute such material adversity as to dissuade a reasonable worker from making a discrimination charge). Here, both Muttathottil and JT were warned against future disruptive or unprofessional behavior in the workplace; Muttathottil was not singled out. Wooten made no express threat of reprisal for Muttathottil's EEO activity, and he suffered no job loss, suspension, salary reduction, reduction of job duties, or any other form of discipline by Wooten. Indeed, Muttathottil himself was undeterred by Wooten's comment: a few months later he filed an EEO complaint alleging seven distinct forms of discrimination, an act which had no repercussions on his employment status. Consequently, Muttathottil has not shown that he has suffered from an adverse employment action,[FN1] and therefore has not articulated a prima facie case of retaliation.

**V**

For the foregoing reasons, we AFFIRM.

FN* District Judge of the Southern District of Texas, sitting by designation.

FN** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2465009 (C.A.5 (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2010 WL 2465009 (C.A.5 (Tex.)))**

> FN1. Muttathottil contends that the Administrative Judge's finding that a number of Wooten's actions presented actionable, adverse actions under *Burlington Northern* is admissible in this case, citing *Chandler v. Roudebush,* 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). However, that the Administrative Judge's opinion was admissible does not require the district court to be bound by it. Thus, the district court did not err in failing to give preclusive weight to the Administrative Judge's findings regarding Wooten's alleged retaliatory actions.

C.A.5 (Tex.),2010.
Muttathottil v. Gordon H. Mansfield
Slip Copy, 2010 WL 2465009 (C.A.5 (Tex.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.)))

**C**This case was not selected for publication in the
Federal Reporter.

Not for Publication in West's Federal Reporter See
Fed. Rule of Appellate Procedure 32.1 generally go-
verning citation of judicial decisions issued on or after
Jan. 1, 2007.  See also Fifth Circuit Rules 28.7,
47.5.3, 47.5.4.  (Find CTA5 Rule 28 and Find CTA5
Rule 47)

United States Court of Appeals,
Fifth Circuit.
Raymond Leslie SANDERS, Plaintiff-Appellant
v.
Murray AGNEW, Individually and in his official
capacity; Jeff Langley, Individually and in his
capacity; Shannon Rousey, Individually and in his
official capacity; Mike Bell, Individually and in his
official capacity; Unnamed Officers, Individually and
in their official capacities; Office of the District At-
torney, Limestone County, Texas; Roy Defriend,
Individually and in his official capacity; Dennis Wil-
son, Individually and in his official capacity; Limes-
tone County, Texas, Defendants-Appellees.
No. 08-50407
Summary Calendar.

Jan. 12, 2009.

**Background:** Arrestee brought § 1983 action against
county, county officers, and district attorney, among
others, relating to search and seizure of his property
and arrest. The United States District Court for the
Western District of Texas granted certain defendants'
motions for summary judgment and/or to dismiss,
denied arrestee's motions for scheduling order, leave
to amend complaint, oral hearing, and continuance,
and granted defendants' motion to quash. Arrestee
appealed.

**Holdings:** The Court of Appeals held that:
(1) county could not be held liable under theory of
respondeat superior;
(2) county could not be subject to liability under §
1983;
(3) county sheriff could not be held liable under §
1983 based on acts of officers;

(4) it was within district court's sole discretion to deny
arrestee's motion for oral hearing on summary judg-
ment motion;
(5) court was not required to grant arrestee's unop-
posed request for scheduling order;
(6) arrestee was not entitled to leave to amend com-
plaint;
(7) quashing of subpoena seeking to obtain judge's
testimony was appropriate;
(8) district court did not abuse its discretion in denying
arrestee's motion to strike summary judgment motion;
and
(9) there was no evidence that officers acted in bad
faith in obtaining warrant, a material omission by
officers in obtaining warrant, or any infirmity in
warrant, as would subject officers to liability in action.

Affirmed.

West Headnotes

**[1] Civil Rights 78 ⬥1348**

78 Civil Rights
    78III Federal Remedies in General
        78k1342 Liability of Municipalities and Other
Governmental Bodies
            78k1348 k. Criminal Law Enforcement;
Prisons. Most Cited Cases
County could not be held liable under theory of res-
pondeat superior, in arrestee's § 1983 action alleging
unlawful search and seizure of his property and arrest.
U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

**[2] Civil Rights 78 ⬥1351(4)**

78 Civil Rights
    78III Federal Remedies in General
        78k1342 Liability of Municipalities and Other
Governmental Bodies
            78k1351 Governmental Ordinance, Policy,
Practice, or Custom
                78k1351(4) k. Criminal Law Enforce-
ment; Prisons. Most Cited Cases
Arrestee failed to allege any policy of county that was
moving force behind any alleged constitutional viola-
tions, and thus county could not be subject to liability,

306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.)))**

in arrestee's § 1983 action relating to search and sei-
zure of his property and arrest. U.S.C.A.
Const.Amend. 4; 42 U.S.C.A. § 1983.

**[3] Civil Rights 78 €⎯1358**

78 Civil Rights
   78III Federal Remedies in General
      78k1353 Liability of Public Officials
         78k1358 k. Criminal Law Enforcement;
Prisons. Most Cited Cases
County sheriff was not personally involved with al-
leged unlawful search and seizure of arrestee's prop-
erty and his arrest by county officers, and thus could
not be subject to liability based on acts of officers, in
arrestee's § 1983 action. U.S.C.A. Const.Amend. 4; 42
U.S.C.A. § 1983.

**[4] Federal Civil Procedure 170A €⎯2547.1**

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)3 Proceedings
            170Ak2547 Hearing and Determination
               170Ak2547.1 k. In General. Most
Cited Cases
It was within district court's sole discretion to deny
arrestee's motion for oral hearing on summary judg-
ment motion, in his § 1983 action against county,
county officers, and district attorney relating to search
and seizure of his property and arrest. U.S.C.A.
Const.Amend. 4; 42 U.S.C.A. § 1983;
U.S.Dist.Ct.Rules W.D.Tex., Rule CV-7(g).

**[5] Federal Civil Procedure 170A €⎯1935.1**

170A Federal Civil Procedure
   170AXIV Pre-Trial Conference
      170Ak1935 Order
         170Ak1935.1 k. In General. Most Cited
Cases
Arrestee was not entitled to issuance of scheduling
order, in his § 1983 action against county, county
officers, and district attorney relating to search and
seizure of his property and arrest, even though his
request for scheduling order was unopposed, where it
appeared that arrestee did not submit proposed sche-
duling order to court, as required by Local Rules, and
arrestee even acknowledged in his motion for a

scheduling order that it would be proper to await the
court's ruling on the defendants' motion to dismiss.
U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983;
U.S.Dist.Ct.Rules W.D.Tex., Rule CV-16(c).

**[6] Federal Civil Procedure 170A €⎯849**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(E) Amendments
         170Ak849 k. Proceedings for Allowance.
Most Cited Cases
Arrestee failed to explain why justice so required that
he be granted leave to amend his complaint, in his §
1983 action against county, county officers, and dis-
trict attorney relating to search and seizure of his
property and arrest, and thus arrestee was not entitled
to such leave. U.S.C.A. Const.Amend. 4; 42 U.S.C.A.
§ 1983; Fed.Rules Civ.Proc.Rule 15(a)(2), 28
U.S.C.A.

**[7] Federal Civil Procedure 170A €⎯1323.1**

170A Federal Civil Procedure
   170AX Depositions and Discovery
      170AX(C) Depositions of Parties and Others
Pending Action
         170AX(C)1 In General
            170Ak1323 Persons Whose Depositions
May Be Taken
               170Ak1323.1 k. In General. Most
Cited Cases
Arrestee's statement that he was seeking testimony
relating to judge's signing of search warrant was not
compelling basis for requiring judge to appear for
deposition pursuant to subpoena, in arrestee's § 1983
action against county, county officers, and district
attorney relating to search and seizure of his property
and arrest, and thus district court's quashing of sub-
poena was appropriate. U.S.C.A. Const.Amend. 4; 42
U.S.C.A. § 1983.

**[8] Federal Civil Procedure 170A €⎯2553**

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)3 Proceedings
            170Ak2547 Hearing and Determination
              170Ak2553 k. Time for Considera-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.)))

tion of Motion. Most Cited Cases
Arrestee's request for discovery prior to ruling on
defendants' motion for summary judgment was futile,
and thus, district court did not abuse its discretion in
denying arrestee's motion to strike summary judgment
motion, in his § 1983 action against county, county
officers, and district attorney relating to search and
seizure of his property and arrest; arrestee sought
deposition testimony of judge who signed search
warrant, but court properly quashed subpoena for
judge's testimony. U.S.C.A. Const.Amend. 4; 42
U.S.C.A. § 1983.

[9] Civil Rights 78 ⚖══1088(3)

78 Civil Rights
    78I Rights Protected and Discrimination Prohi-
bited in General
        78k1088 Police, Investigative, or Law En-
forcement Activities
            78k1088(3) k. Searches and Seizures. Most
Cited Cases

Civil Rights 78 ⚖══1088(4)

78 Civil Rights
    78I Rights Protected and Discrimination Prohi-
bited in General
        78k1088 Police, Investigative, or Law En-
forcement Activities
            78k1088(4) k. Arrest and Detention. Most
Cited Cases
There was no evidence that county officers acted in
bad faith in obtaining warrant to search arrestee's
residence, a material commission by officers in ob-
taining warrant, or any infirmity in warrant, as would
subject officers to liability in arrestee's § 1983 action.
U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.
*845 Raymond Leslie Sanders, Groesbeck, TX,
Plaintiff-Appellant.

Michael W. Dixon, Haley & Olson, Waco, TX, for
Defendants-Appellees.

Appeal from the United States District Court for the
Western District of Texas, USDC No. 6:06-cv-185.

Before SMITH, STEWART, and SOUTHWICK,
Circuit Judges.

PER CURIAM: FN*

        FN* Pursuant to 5TH CIR. R. 47.5, the court
        has determined that this opinion should not
        be published and is not precedent except
        under the limited circumstances set forth in
        5TH CIR. R. 47.5.4.

*846 **1 Plaintiff-Appellant Raymond Leslie Sanders
("Sanders") appeals from the district court's dismissal
of his claims against Dennis Wilson and Limestone
County; grant of summary judgment on his claims
against Murray Agnew and Jeff Langley; denial of a
motion for a scheduling order, motion for leave to
amend complaint, motion for an oral hearing, motion
for continuance; and quashing a subpoena for a Justice
of the Peace. For the following reasons, we AFFIRM.

I. Factual and Procedural Background

This case arose from the Limestone County authori-
ties' ("officers") investigation of a reported vehicle
theft. David Elmore filed a theft complaint on his
truck on December 11, 2004 by phone in Dallas,
Texas. A confidential informant told an officer that
Sanders was hiding Elmore's stolen truck in his barn,
and the officer verified that Elmore had reported a
stolen vehicle. A separate confidential informant told
an officer that he had actually seen Elmore's stolen
truck in Sanders's barn. The officer also learned that
Elmore had made a claim with an insurance company
for the stolen vehicle.

The officers first attempted to speak with Sanders
about the information they received by going to
Sanders's business on December 23, 2004. Sanders
and his wife were uncooperative with the officers at
the business location, so the officers obtained a search
warrant. The officers submitted an affida-
vit/application for a search warrant to Justice of the
Peace Marcus Hannah. During the process, an officer
received a phone call from another officer advising
that he had just spoken to a man claiming to be El-
more, the owner of the allegedly stolen truck, who said
there had been a mistake and a family friend actually
had the truck.

The officer considered the story suspicious, as the call
was only made after officers were posted at Sanders's
property. The officer reported this information to the
Justice of the Peace, but the Justice of the Peace non-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.)))

etheless issued the search warrant.

Officers searched Sanders's property and found a truck matching the description of Elmore's truck that was reported stolen padlocked in a barn. The front and back license plates had been removed from the truck, the Nader sticker had been removed, the VIN was covered, the truck was devoid of personal effects, and the toolbox was missing with only an outline of a toolbox remaining on the bed of the truck. Sanders was arrested, charged with theft, and jailed. In January 19, 2005, Sanders's case was presented to a grand jury, which did not return an indictment. Plaintiff was still held on bond, and on January 20, 2005, there was an examining trial on the theft charge. The trial was continued until February 17, 2005, where the district attorney conceded that there was no probable cause. The court released Sanders from bond. The linchpin of this "prank" involved Elmore's cousin, Wesley Elmore ("Wesley"), and Wesley's friend, Shannon Simmons. This duo drove Elmore's truck to Sanders's property without a note or other means of notifying Sanders that the truck was there. Elmore reported the truck stolen to the Dallas Police Department. Wesley did not report the "prank" to Elmore until the following week. When Elmore learned about the "prank," he started calling the Dallas Police Department to "un-report" the truck as stolen. At some point, Elmore also **847 went to Sanders's home while Sanders was not there and removed the toolbox from the truck. On December 23, 2004, Elmore called the Limestone County Sheriff's Office before the search warrant was executed and informed an officer that the truck was not stolen.^FN1

> FN1. The "prank" may be more appropriately characterized as a scheme. There were numerous questionable issues surrounding the prank, including numerous alleged misrepresentations by Elmore to his insurance company; Wesley's ability to drive Elmore's truck through a locked security gate on Sanders's property; Elmore's ability to remove the toolbox from Sanders's barn although it was padlocked; the fact that the truck was dropped off at Sanders's house instead of his auto repair shop, which was unusual considering that Sanders previously had not worked on Elmore's vehicles at his home; Elmore's awareness that it was all a "prank" about the same time that he learned

that his insurance had lapsed for non-payment; Sanders fled when officers first attempted to talk to him about the truck; Elmore saw two officers at Sanders's property but did not stop to clarify things; Elmore had reported multiple thefts in the last few years from which he received insurance settlements; Sanders's business routinely created work orders for serviced vehicles, but no work order was created for the truck. While the state court judge found that there was no probable cause for the arrest, the judge found that there was probable cause as to insurance fraud.

**2 Sanders filed a complaint on July 5, 2006, bringing claims under 42 U.S.C. § 1983 related to the search and seizure of his property and arrest. Defendants filed a joint motion to dismiss, seeking dismissal based on failure to state a claim; prosecutorial immunity, qualified immunity, and/or quasi-judicial immunity; break of causation; issue preclusion; and/or collateral estoppel. The magistrate judge issued a Report and Recommendation ("R & R"), recommending that Defendants' joint motion to dismiss be granted, to which Sanders objected.

The district court conducted a de novo review and dismissed Sanders's claims against Roy Defriend, the district attorney, as barred by prosecutorial immunity. As to officers Jeff Langley and Murray Agnew, who obtained the search warrant, the district court found that fact issues needed to be determined before dismissing claims against them based on qualified immunity. Specifically, an issue existed at the motion to dismiss stage as to whether the officers made a misrepresentation in their affidavit for the arrest warrant by stating that Sanders stole Elmore's truck when they should have known that it was not stolen. As to Dennis Wilson, the district court granted the motion to dismiss finding that he was entitled to qualified immunity. The court also found that Sanders had failed to allege any policies of Limestone County that were the moving force behind any of the alleged constitutional violations, and the court granted the motion to dismiss as to Limestone County. Sanders did not file any objections to the magistrate judge's recommendation to dismiss claims against Defendants Rousey and Bell or the conspiracy claim against all the Defendants. The district court nonetheless conducted a de novo review, finding that the recommendations as to Rousey, Bell,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.)))

and the conspiracy claim should be adopted.

The magistrate judge also recommended denying Sanders's motion for partial summary judgment based on the recommendation to grant Defendants' motion to dismiss. Because the district court denied the motion to dismiss as to some defendants, the court re-referred Sanders's motion for partial summary judgment so it could be considered with any other motion for summary judgment.

After the magistrate judge's R & R was filed, Sanders filed a motion for leave to amend his complaint. The district court *848 denied the motion, stating that Sanders had failed to provide any specific explanation regarding how "justice so require[d]" the requested amendment.

Murray Agnew and Jeff Langley filed their motion for summary judgment on October 5, 2007. On November 1, 2007, Sanders filed a motion for an oral hearing on the motion for summary judgment, which the court denied. Sanders also issued a deposition subpoena for a Justice of the Peace, which Agnew and Langley sought to quash. The court granted the Defendants motion to quash because Sanders failed to issue the subpoena through the clerk.

On December 19, 2007, the magistrate judge issued a R & R that Agnew and Langley's motion for summary judgment be granted. Sanders sought additional time to filed objections, and the district court extended the time to file objections until January 16, 2008. Sanders did not file objections, however, until January 17, 2008.

**3 The court issued its Memorandum Opinion and Order on March 20, 2008, adopting the R & R of the magistrate judge, and granting Agnew and Langley's motion for summary judgment. Judgment was entered on March 21, 2008, and Sanders timely appealed.

## II. Discussion

### A. Motion to Dismiss

We review dismissal of a complaint for failure to state a claim *de novo*. *Lindquist v. City of Pasadena, Tex.,* 525 F.3d 383, 386 (5th Cir.2008) (citation omitted). We accept all well-pleaded facts as true, "viewing

them in the light most favorable to the plaintiff." *Id.* (citation omitted). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (internal citation and footnote omitted).

[1][2] Sanders challenges the grant of the motion to dismiss as to Limestone County and Dennis Wilson. Even under the liberal construction afforded *pro se* litigants, Sanders fails to state a claim against Limestone County and Wilson. First, municipalities may not be held liable under a theory of respondeat superior, and Sanders failed to allege any policy of Limestone County that was the moving force behind any of the alleged constitutional violations. Therefore, Limestone County cannot be held liable. *See Board of County Comm'rs v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

[3] Sanders also sought to hold Wilson liable based on acts of his subordinates. Sanders does not allege that Wilson was personally involved with the alleged acts, and therefore, the district court properly granted the motion to dismiss as to Wilson based on qualified immunity. *See Estep v. Dallas County, Tex.,* 310 F.3d 353, 361 (5th Cir.2002) (citing *Watson v. Interstate Fire & Cas. Co.,* 611 F.2d 120 (5th Cir.1980), for the proposition that "a sheriff without any personal involvement was properly dismissed from a § 1983 suit"). We hold that the district court properly dismissed Sanders's claims against Limestone County and Dennis Wilson.

### B. Motion for Scheduling Order and Motion for Oral Hearing

We afford great deference to a district court's ruling on scheduling matters, reviewing only for abuse of discretion. *See Hodges v. United States,* 597 F.2d 1014, 1018 (5th Cir.1979). Sanders argues that the magistrate judge abused his discretion *849 by failing to grant an unopposed petition for a scheduling order and waiting more than three months to issue a ruling on the motion for scheduling order. He also contends that the district court abused its discretion by denying his motion for an oral hearing on a summary judgment

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.))
**(Not Selected for publication in the Federal Reporter)**
(Cite as: 306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.)))

motion and failing to rule on the motion within a reasonable time.

[4] The Local Rules of the Western District of Texas expressly provide that "the allowance of an oral hearing shall be within the sole discretion of the judge to whom the motion is assigned." W.D. Tex. Local Rule CV-7(g). The district court did not abuse its discretion in denying Sanders's motion for an oral hearing.

**\*\*4** [5] Regarding the motion for a scheduling order, the Local Rules state that "the parties shall submit a proposed scheduling order" to the court. Local Rule CV-16(c). Sanders does not assert that he submitted the required proposal, and it appears from the record that the parties did not do so. Sanders failed to comply with the Rules of the court, and thus, we find no abuse of discretion by failing to enter a scheduling order.

Even assuming the parties submitted a proposed scheduling order, we still find no abuse of discretion. Sanders filed this suit on July 6, 2006. Sanders did not return the executed summons until more than two months later, in late September and early October. Within days, the Defendants filed a joint motion to dismiss on October 10, 2006. In February 2007, the court directed the parties to brief the issue of qualified immunity. Sanders did not seek a motion for a scheduling order until April 9, 2007, after the parties had submitted briefing on qualified immunity. Further, on May 2, 2007, Sanders sought a protective order to stay all depositions in the action, which the court granted on the same date it entered its R & R for dismissal of Sanders's action. In denying the motion for scheduling order, the magistrate judge stated that "[b]ecause a report and recommendation has been entered, this case has been returned to the docket of the district judge. Thus, the district judge, if necessary, will revisit this issue and enter such an order in accordance with the strictures of his docket."

Sanders even acknowledged in his motion for a scheduling order that "it would be proper to await the court's ruling on the Defendants' motion to dismiss before filling [sic] any proposed scheduling order or attempting any discovery." Where Sanders sought a stay seeking protection from discovery and "felt it would be proper to await the court's ruling on the Defendants' motion to dismiss," we find that the magistrate judge did not abuse his discretion in not is-

suing a scheduling order.

*C. Motion to Amend Pleading*

[6] After the magistrate judge entered its R & R recommending dismissal of Sanders's claims, Sanders filed a motion for leave to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a). Sanders stated that he was seeking to amend the complaint to conform to evidence produced during discovery and "to protect the rights of the Defendants to a proper defense, as well as the Plaintiff's right to justice."

Rule 15(a) provides in part that the "court should freely give leave when justice so requires." FED.R.CIV.P. 15(a)(2). The district court denied Sanders's motion, stating that "Plaintiff has failed to provide any specific explanation regarding how or why 'justice so requires' the requested amendment." We agree. Even on appeal, Sanders fails to explain why justice so required that he be granted leave to amend. *See Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir.1999). The district court \*850 did not err in denying Sanders's motion to amend the complaint.

*D. Motion to Quash Subpoena*

**\*\*5** [7] Sanders served Justice of the Peace Hanna with a subpoena to appear for a deposition. Sanders states that he was seeking testimony relating to Judge Hanna's signing of the search warrant. It is imperative to "carefully scrutinize" the basis for compelling a judge to testify as to action taken in his judicial capacity. *Gary W. v. State of La., Dep't of Health & Human Res.*, 861 F.2d 1366, 1369 (5th Cir.1988) (referring to the longstanding principle as the mental processes rule). After careful review, we find no abuse of discretion in quashing the subpoena.

*E. Motion to Strike Defendants' Motion for Summary Judgment*

Sanders contends that the district court abused its discretion when it denied his motion to strike the Defendants' motion for summary judgment, as Sanders was seeking to obtain Judge Hanna's testimony. Generally, summary judgment may be granted only after an "adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We review the denial of Sanders's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.)))

motion to strike for an abuse of discretion. *See Paul Kadair, Inc. v. Sony Corp. of Am., 694 F.2d 1017, 1029 (5th Cir.1983).* A plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is futile. *See id. at 1029-30.*

[8] Because the court did not abuse its discretion in quashing the subpoena for Judge Hanna's testimony, the court did not abuse its discretion in denying a motion to quash a summary judgment motion based on Sanders's attempts to obtain Judge Hanna's testimony.

*F. Motion for Summary Judgment*

Sanders assigns error to the district court's grant of summary judgment in favor of Defendants, but Sanders's "objections" do not specify the specific claim(s) to which the objections relate. We have liberally construed Sanders's objections to apply to each relevant claim.

We review a district court's grant of summary judgment *de novo. LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 386 (5th Cir.2007).* Summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A genuine issue of material fact exists if the summary judgment evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).* All the facts and evidence must be taken in the light most favorable to the non-movant. *LeMaire, 480 F.3d at 387.*

[9] Most of Sanders's objections relate to facts that occurred prior to the issuance of the search warrant.[FN2] Sanders's objection to "Statement 1" [FN3] pertains to when the reportedly stolen vehicle was taken to *851 Sanders's property; "Statement 2" goes to the omission of a fact that an officer had already spoken with Sanders's wife; and "Statement 3," "Statement 4," and "Statement 5" relate to the phone call from Elmore to an officer. These objections demonstrate no reversible error. An officer executing a warrant is entitled to dismissal of claims brought against him "if the warrant is regular on its face and the officer does not act in bad

faith or with notice of an infirmity of the warrant." *Kugle v. Shields, 62 F.3d 395 (5th Cir.1995)* (unpublished); *Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 280 (5th Cir.1992).* There is no summary judgment evidence of bad faith, a material omission by the officers in obtaining the search warrant, or any infirmity in the warrant, so the officers were entitled to summary judgment based on the execution of the search warrant.

> FN2. Sanders also seems to base his assignment of error as to the summary judgment ruling on the court's grant of the motion to quash the subpoena for Judge Hanna's testimony. To the extent Sanders relies on the discovery ruling quashing the subpoena for Judge Hanna's testimony, we find no reversible error on that basis for the reasons discussed above.

> FN3. Sanders assigns error to specific statements of the court, and we likewise will use Sanders's designation for reference purposes.

**6 "Statement 6" and "Statement 7" relate to the arrest warrant. Sanders focuses on the purported lack of probable cause to arrest him for the stolen vehicle; Sanders does not dispute that the officers had probable cause to arrest him for insurance fraud. This assignment of error is also without merit. *See United States v. Saunders, 476 F.2d 5, 7 (5th Cir.1973)* ("When an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest.").

Sanders asserts other general objections, including absence of an impartial trial judge and repeated objections regarding execution of the search warrant and arrest. Having considered the parties' briefs and the record, we conclude that Sanders's general objections are without merit.

**III. Conclusion**

Because we find no reversible error, we AFFIRM.

C.A.5 (Tex.),2009.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.)))**

Sanders v. Agnew
306 Fed.Appx. 844, 2009 WL 62248 (C.A.5 (Tex.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp., 1997 WL 672651 (N.D.Miss.)
**(Cite as: 1997 WL 672651 (N.D.Miss.))**

**H**Only the Westlaw citation is currently available.

United States District Court, N.D. Mississippi.
U.S. AXMINSTER, INC. Plaintiff Coun-
ter-Defendant
v.
Calvin B. CHAMBERLAIN, Jr. Defendant Coun-
ter-Plaintiff.
**No. CIV.A. 4:95-332-D-B.**

Sept. 26, 1997.

*MEMORANDUM OPINION*

DAVIDSON.

*1 Presently before this court are the Defendant's
"Objections to Magistrate's Order Denying Motion for
Leave to Amend and Appeal." Having considered said
objections and the opposition thereto, the court is of
the opinion that the objections are not well-taken and
should be overruled.

I. Facts

This dispute concerns axminster carpet loom tech-
nology. Axminster carpet is a type of floor covering in
which the pattern is sewn into the carpet rather than
stamp-dyed on it. The Plaintiff U.S. Axminster, Inc.,
("Plaintiff" or "U.S. Axminster") manufactures this
type of carpet, and the Defendant Calvin B. Cham-
berlain, Jr., ("Defendant" or "Mr. Chamberlain") is a
former employee of the Plaintiff. For a number of
years, the Plaintiff and the Defendant worked together
developing a new type of axminster carpet loom,
which the parties refer to as the "computerized ax-
minster loom." FN1 This dispute began when the De-
fendant left the Plaintiff's employ and allegedly shared
trade secrets concerning the loom with the Plaintiff's
competitors.

> FN1. The parties use other labels as well,
> such as "651 Loom" and "C.A.L." Also, in its
> complaint the plaintiff uses the phrase "Se-
> cret Process and Equipment."

What issue this court addresses specifically in this

opinion is the Defendant's desire to amend his plead-
ings. Central to this issue are the following dates: On
October 20, 1995, the Plaintiff commenced the present
action. On December 21, 1995, the Defendant filed his
answer and counterclaims. By order dated February
16, 1996, Magistrate Judge Eugene M. Bogen pro-
vided, *inter alia,* that motions for leave to amend the
pleadings shall be filed by October 28, 1996. *U.S.
Axminster v. Chamberlain,* Civil Action No.
5:95cv332-D-B (N.D.Miss. Feb. 16, 1996) (Case
Management Plan and Scheduling Order); *see* Uni-
form Civil Justice Expense and Delay Reduction Plan
§ 3(I)(B)(8)(a) (requiring judicial officer to set dead-
line for amending pleadings). On May 30, 1997, some
seven months after the October 28, 1996, deadline, the
Defendant filed a motion for leave of court to amend
his pleadings. By order dated July 16, 1997, Judge
Bogen denied the Defendant's motion. *U.S. Axminster
v. Chamberlain,* Civil Action No. 5:95cv332-D-B
(N.D.Miss. July 16, 1997) (Order Denying Defen-
dant's Motion for Leave of Court to Amend Plead-
ings).

Now the Defendant asks this court to set aside Judge
Bogen's denial. This court may set aside a Magistrate
Judge's order on a non-dispositive matter, such as the
one at bar, only if it finds the order "clearly erroneous
or contrary to law." Fed.R.Civ.P. 72(a); 28 U.S.C. §
636(b)(1)(A).

II. Discussion

When a party moves to amend his pleadings, "leave
shall be freely given when justice so requires."
Fed.R.Civ.P. 15(a). Emphasizing how freely leave
must be given, the United States Supreme Court re-
quires courts to provide justifying reasons when they
deny leave:

> In the absence of any apparent or declared rea-
> son-such as undue delay, bad faith or dilatory mo-
> tive on the part of the movant, ... [or] undue preju-
> dice to the opposing party by virtue of allowance of
> the amendment ...-the leave sought should, as the
> rules require, be 'freely given.' Of course, the grant
> or denial of an opportunity to amend is within the
> discretion of the District Court, but outright refusal
> to grant the leave without any justifying reason

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 672651 (N.D.Miss.)
**(Cite as: 1997 WL 672651 (N.D.Miss.))**

appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

**\*2** *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed. 222 (1962). In the case at bar, the Magistrate Judge cited two reasons for denying the Defendant's motion for leave to amend: undue delay and undue prejudice. *U.S. Axminster v. Chamberlain,* Civil Action No. 5:95cv332-D-B (N.D.Miss. July 16, 1997) (Order Denying Defendant's Motion for Leave of Court to Amend Pleadings) ("Of considerable concern to the court is the delay in bringing this motion, and the delay plaintiff contends will occur if the counterclaims are added to this suit.") If either of these reasons is neither clearly erroneous nor contrary to law, then this court must overrule the Defendant's objections.

### A. Undue Delay

The Defendant acknowledges that his motion for leave to amend pleadings fell seven months past the deadline established by the Case Management Plan and Scheduling Order. The Defendant asserts, though, that he only realized he could file the motion when he discovered new evidence during a deposition of the president of U.S. Axminster, Samuel H. Silver, on February 3, 1997. During that deposition, the Defendant explains, Mr. Silver stated that U.S. Axminster recently utilized computerized axminster looms to fulfill a contract with two governmental agencies. The Defendant asserts that this evidence provided him with new counterclaims. The new counterclaims include claims for damages for "wrongful utilization of Chamberlain's ideas and inventions" and "reasonable compensation to Chamberlain for the unjust enrichment to [U.S. Axminster]." Additional Counterclaims of Calvin B. Chamberlain, Jr., at 6. The Defendant argues that before the deposition he had no ground to add these counterclaims, so his delay in bringing the motion to amend was not undue.

The Defendant's justification for the seven-month delay did not satisfy the Magistrate Judge. As the Magistrate Judge explained, the Defendant still waited until May 30, 1997-nearly four months after discovering the new evidence-to file his motion to amend. More importantly, the Magistrate Judge doubted that the evidence was "new." As the Magistrate Judge explained,

[T]he discovery responses of USAX ... reveal that USAX continued to use the "Secret Process," or the loom based on Chamberlain's idea, after [Chamberlain's] termination, so this information was not first revealed during Silver's deposition. In fact, it is clear from reading the complaint that USAX would continue to utilize the "Secret Process" since it considered it to belong to the company.

*U.S. Axminster v. Chamberlain,* Civil Action No. 5:95cv332-D-B (N.D.Miss. July 16, 1997) (Order Denying Defendant's Motion for Leave of Court to Amend Pleadings). As the Fifth Circuit recently stated, "[I]n exercising its discretion to deny leave to amend a complaint, a trial court may properly consider (1) an 'unexplained delay' following an original complaint, and (2) whether the facts underlying the amended complaint were known to the party when the original complaint was filed." *Southmark Corp. v. Schulte Roth & Zabel,* 88 F.3d 311, 316 (5th Cir.1996) (citations omitted); *see also Pyca Indus., Inc. v. Harrison County Waste Water Management Dist.,* 81 F.3d 1412, 1420 (5th Cir.1996) (upholding denial of motion to amend because responses to discovery requests made during prior year provided movant with underlying facts to support his new claim); *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 140 (5th Cir.1993) (upholding denial of motion to amend because movant "knew of facts underlying their mislabeling claim before this action commenced"); *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 599 (5th Cir.1981) ("[A party's] awareness of facts and failure to include them in the complaint might give rise to the inference that the [party] was engaging in tactical maneuvers to force the court to consider various theories seriatim."). This court cannot say that it was either clearly erroneous or contrary to law for the Magistrate Judge to find that the Defendant knew the facts supporting his new counterclaims well prior to Mr. Silver's deposition.

**\*3** Further, this court notes that the Defendant proposes to add far more than his "wrongful utilization" and "unjust enrichment" counterclaims. The Defendant seeks the following additional relief: (1) a declaratory judgment that the Defendant is the sole owner of his ideas and inventions, (2) alternatively, a declaratory judgment that the Defendant and U.S. Axminster jointly own the ideas and inventions, and (3) alternatively, royalties "some fifteen paragraphs to his

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 672651 (N.D.Miss.)
**(Cite as: 1997 WL 672651 (N.D.Miss.))**

statement of facts, most of which have nothing to do with the information the Defendant allegedly discovered at the deposition of Mr. Silver. In some of the paragraphs, for example, the Defendant argues that he developed the computerized axminster loom outside the course and scope of his employment. Addressing these additions, the Magistrate Judge stated that the Defendant is proposing "a new twist to the lawsuit which certainly should have been added earlier, and which was not 'discovered' through Silver." *U.S. Axminster v. Chamberlain,* Civil Action No. 5:95cv332-D-B (N.D.Miss. July 16, 1997) (Order Denying Defendant's Motion for Leave of Court to Amend Pleadings). Like the Magistrate Judge, this court finds no connection between much of what the Defendant seeks to add and what the Defendant claims he discovered at the deposition of Mr. Silver. Indeed, most of the Defendant's proposed amendments-such as the claim that he developed the computerized axminster loom outside the course and scope of his employment-concern the thoughts and actions of the Defendant himself. Therefore, this court finds that the Magistrate Judge's reasoning is neither clearly erroneous nor contrary to law.

### B. Undue Prejudice

The Magistrate Judge found that the Defendant's amendments would lead to at least four months of additional discovery and a continuance of the trial until the following year. The discovery, which the Plaintiff asserts would be directed at Mr. Chamberlain's claim that he developed the computerized axminster loom at his home, would include depositions of Mr. Chamberlain's family, former associates and alleged suppliers, and it would cost the Plaintiff considerably. Discussing undue prejudice, the Fifth Circuit has stated, "[S]hould the new theory necessitate reiteration of discovery proceedings, [the non-movant] would be prejudiced." *Dussouy,* 660 F.2d at 599 (adding that trial court may solve prejudice by ordering movant to pay non-movant's discovery costs). A well-recognized treatise agrees, explaining that "if the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial." 6 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1487 (1990). Considering the significant new preparation the amendments would re-

quire in the case at bar, the Magistrate Judge refused to grant the Defendant's motion for leave to amend. This court cannot say the refusal was either clearly erroneous or contrary to law.

**\*4** Incidentally, in his Memorandum of Authorities in Support of Chamberlain's Objections, the Defendant quotes [FN2] a section of WRIGHT & MILLER. This court finds the section particularly instructive on the relationship between undue delay and undue prejudice. An excerpt of the sections follows:

> FN2. Actually, the Defendant's quotation is in error. The Defendant's quotation reads, "A party who delays in seeking an amendment *is not* acting contrary to the spirit of the rule...." Memorandum of Authorities in Support of Chamberlain's Objections, at 10 (emphasis added). This court's copy of WRIGHT & MILLER provides differently: "A party who delays in seeking an amendment *is* acting contrary to the spirit of the rule...." 6 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1488 (1990) (emphasis added).

A party who delays in seeking an amendment is acting contrary to the spirit of [Rule 15] and runs the risk of the court denying permission because of the passage of time. In most cases, delay alone is not a sufficient reason for denying leave. However, an amendment clearly will not be allowed when the moving party has been guilty of delay in requesting leave to amend and, as a result of the delay, the proposed amendment, if permitted, would have the effect of prejudicing another party to the action. 6 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1488 (1990).

### III. Conclusion

Upon careful consideration of the record in this cause, the submissions of the parties, and the order of the Magistrate Judge, this court cannot say that any portion of Magistrate Judge Bogen's order dated July 16, 1997, is either clearly erroneous or contrary to law. As such, this court shall overrule the Defendant's objections to that order and shall not disturb the order of the Magistrate Judge.

A separate order in accordance with this opinion shall

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 672651 (N.D.Miss.)
**(Cite as: 1997 WL 672651 (N.D.Miss.))**

issue this day.

This the ___ day of September 1997.

N.D.Miss.,1997.
U.S. Axminster, Inc. v. Chamberlain
Not Reported in F.Supp., 1997 WL 672651
(N.D.Miss.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.